[No. 13938.   In Bank. — September 16, 1891.]

THE CITY OF PASADENA, RESPONDENT, *v.* CHARLES W. STIMSON ET AL., APPELLANTS.

EMINENT DOMAIN — CONDEMNATION OF LANDS BY MUNICIPAL CORPORATION — PLEADING — CLASSIFICATION — FAILURE TO AGREE. — A complaint in a proceeding to condemn land for sewer purposes by a municipal corporation of the fifth or sixth class need not aver to what class of municipal corporations the plaintiff belongs, nor that an effort has been made to agree upon a price, which effort has failed; and a complaint omitting such averments is not subject to general or special demurrer by reason of such omission.

ID. — MUNICIPAL INCORPORATION ACT — CONDITIONS OF CONDEMNATION — CONSTITUTIONAL LAW — SPECIAL LEGISLATION. — Section 870 of the Municipal Incorporation Act of 1883, requiring cities of the fifth and sixth classes to make an effort to agree with the owners of land sought to be condemned, before instituting condemnation proceedings, is a special law making a forbidden discrimination against two classes of municipal corporations, by imposing upon them alone a burdensome condition to the exercise of a right common to all public and private corporations and to all natural persons *sui juris* in the state, from which condition all others are exempt by the general law, and is void, as being in conflict with article I., section 2, and article IV., section 25, of the constitution.

ID. — NATURE OF EMINENT DOMAIN — SUBJECTION TO GENERAL LAWS — POWER OF LEGISLATURE — CLASSIFICATION FOR MUNICIPAL ORGANIZATION. — The mode of exercising the power of eminent domain and the conditions upon which it may be invoked are no part of municipal organization, but are the subject of general laws applicable to every person

alike; and the legislature is not empowered to make arbitrary discriminations in this respect between different classes of persons, although empowered by section 6 of article XI. of the constitution to classify cities and towns and make different regulations for the different classes for the purpose of incorporation and organization.

Id. — Test of General Legislation — Arbitrary Classification. — Although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.

Id. — Agency for State — Assailing Conditions of Authority. — It is only in a modified sense that the state is the principal and the plaintiff, in a proceeding to condemn lands, the agent of the state; and the plaintiff in such proceeding is not prevented by the law of agency from questioning the conditions upon which the state authorizes him to act.

Id. — Condemning Right of Way for Sewer — Pleading — Description of Route — Demurrer for Uncertainty. — In a proceeding by a city to condemn a right of way for a sewer, a complaint which shows that the termini of the proposed sewer are the city from which it is to be constructed, and a certain sewer farm, described as consisting of certain subdivisions of the government survey, and which also shows the general and particular route thereof, and is accompanied by a map of so much of the route as is involved in the condemnation proceeding, is sufficiently certain, and is not demurrable for uncertainty because it does not describe nor does the map show the exact spot to which the sewer had been constructed when the condemnation proceedings were commenced, nor give the name of a county road upon the route, and describes part of it as "along and east of the center line" of an avenue named.

Id. — Nonsuit — Evidence — Public Use — Necessity for Sewer — Necessity for Taking. — The legislature having declared by statute that sewerage is a public use, the inquiry on that head is closed; and when a city or town decides that a sewer is desirable, and institutes condemnation proceedings for a right of way therefor, it is bound to prove only that the taking of the property sought to be condemned is necessary for the construction of the sewer, and a nonsuit cannot be granted for want of proof that the sewer is a necessity.

Id. — Adoption of Plan of Sewer — Municipal Ordinances — General Location of Route — Sufficiency of Proof. — In such proceedings for condemnation, the introduction in evidence of two city ordinances, the first declaring the necessity, among other things, of constructing a system of sewers and of borrowing money for that purpose, and the second reciting the passage and substance of the first and setting forth in detail the system of surveys adopted, embracing the sewerage farm, and locating the termini and direction of the proposed outfall sewer involved in the condemnation proceedings, though not specifically locating the particular route from the city to the sewer farm, and providing for a special election to decide as to whether or not bonds should be issued, together with proof showing that the election was regularly held, and resulted in a vote for the issuance of the bonds, is sufficient to show the adoption by

the city of the plan of an outfall sewer from the city to the sewer farm, as against a motion for nonsuit for failure of such proof. It is not necessary that the ordinance should be more specific as to the route of the sewer.

ID. — FAILURE OF PROOF — COMPATIBILITY OF SEWER WITH PUBLIC GOOD — NUISANCE — AUTHORITY OF STATUTE. — The failure of a city, which seeks to condemn a right of way for a sewer, to prove that its location was most compatible with the greatest public good and least private injury is not a ground for a nonsuit. A sewer properly constructed is not a nuisance *per se,* and nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.

ID. — PRESUMPTION OF LAWFULNESS — UNNECESSARY INJURY — BURDEN OF PROOF — DEGREE OF PROOF. — The acts of the state or its agents in charge of a public use in surveying and locating land under express statutory authority, in exercise of the right of eminent domain, are presumed correct and lawful, in the absence of evidence to the contrary; and where it is attempted to show that the location made is unnecessarily injurious to the owners of property affected thereby, the burden of proof is upon them, and the proof ought to be clear and convincing.

ID. — EVIDENCE AS TO PROPRIETY OF ROUTE — REBUTTAL. — The exclusion of evidence for the defendants, to the effect that a much shorter route than that proposed had been surveyed, upon·a better grade, through lands not thickly settled, is error. Such evidence, though not conclusive, is relevant to a material issue, and should be admitted, subject to plaintiff's right of rebuttal.

ID. — PROOF OF INCORPORATION OF CITY OR TOWN. — In condemnation proceedings for sewerage of a city or town, it is immaterial whether or not it is incorporated, and it is therefore unnecessary to prove its incorporation, although averred in the complaint.

ID. — USE OF HIGHWAY FOR SEWER — SUPERIORITY OF NEW USE — EVIDENCE — CONSTRUCTION OF CODE — SECOND SERVITUDE. — Where it is clearly shown that the sewer, when constructed, would not interfere with the use of the highway along which it was to be built, and that during its construction such use would not be seriously interrupted, it is not necessary to show that the new use is superior to the one to which the property was already appropriated. Subdivision 3 of section 1241 of the Code of Civil Procedure has no application to a case where the same land can be subjected to a second servitude without disturbing the first.

ID. — AUTHORITY OF CITY ATTORNEY AND SPECIAL COUNSEL — PRESUMPTION. — Where the condemnation proceedings were commenced by the city attorney and special counsel for the city, their authority therefor will be presumed, and proof that the city trustees directed the commencement of the proceeding is not necessary, unless their authority is directly attacked.

ID. — CONSTRUCTION OF SEWER — LIMITATION OF RIGHT — DESCRIPTION IN COMPLAINT — DECREE — LIABILITY OF CITY. — In a proceeding to condemn a right of way for a sewer, the city can acquire no right to construct any other sort of a sewer than that described in the complaint, and by the decree its right is strictly limited to the laying of a sewer in exact accordance with the specifications contained in the complaint; and it will be liable for damages for neglect so to construct its sewer or to operate it in a careful, skillful, and proper manner.

ID. — DAMAGES TO ABUTTING PROPERTY. — The damages allowed to abutting property cannot be estimated on the assumption that the sewer, when constructed, will cause greater discomfort or inconvenience than the sewer described in the complaint.

ID. — TEMPORARY ESCAPE OF GAS FROM MAN-HOLES — EXPERT EVIDENCE —INSTRUCTION — NOMINAL DAMAGES. — Where the complaint averred that the man-holes of the sewer were to be constructed in such a manner and so closed as to prevent the escape of noxious gases and odors, *unless temporarily opened for the purpose of making necessary repairs or removing obstructions from the sewer*, the exclusion or striking out of expert evidence as to the offensive and dangerous properties of sewer-gas, and an instruction to the jury to find nominal damages only to the owner of abutting property, is error. The temporary escape of sewer-gas during the time reasonably necessary for repairs or removal of obstructions may occasion substantial injury.

ID. — EVIDENCE — USE OF SEWER — AGREEMENT OF CITY WITH COUNTRY HOTEL. — The fact that the city had agreed to allow a hotel outside the corporate limits to share in the use of the proposed sewer does not render the proposed use any the less a public use, and the exclusion of evidence as to such agreement is not error.

ID. — SEWER FARM — NUISANCE — CONCLUSIVENESS OF DECREE. — In a proceeding to condemn the right of way for an outfall sewer, evidence is not admissible to show that the sewer farm will become a nuisance. If it becomes a nuisance, the decree of condemnation will not preclude its abatement.

ID. — DECREE — COMMON USE OF SEWER. — It is not error to refuse, at the request of the certain defendants, to decree to the plaintiff a limited use of the sewer in common with those whose lands are to be taken, when the pleadings and proofs would not justify such decree.

DECISIONS — CONSTRUCTION OF JUDICIAL OPINIONS. — Expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration, and cannot be safely applied in their largest and most universal sense to dissimilar cases.

APPEAL — REVIEW OF EVIDENCE — BILL OF EXCEPTIONS — SPECIFICATIONS. — Where there are no specifications of particulars in the bill of exceptions as to the insufficiency of the evidence to sustain the judgment, such specifications cannot be made for the first time in the brief of counsel, even if they could be reviewed in the absence of a motion for a new trial.

MUNICIPAL CORPORATIONS — EVIDENCE — JUDICIAL NOTICE. — The court will take judicial notice of the fact of incorporation of a city or town.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Graves, O'Melveny & Shankland,* for Appellants.

The provisions of section 1244 of the Code of Civil Procedure, in so far as they may be deemed license for

a special or particular complaint in condemnation proceedings, which should be viewed *stricti juris*, are unconstitutional. (*People* v. *C. P. R. R. Co.*, 83 Cal. 393.) The provisions of section 1244 of the Code of Civil Procedure being unconstitutional, the complaint must be tested by the general rules of pleading, which require, as has been expressly decided by this court, that the particular class of corporations must be alleged. (*Pritchett* v. *Stanislaus Co.*, 73 Cal. 310.) The statute clearly requires a *bona fide* effort to agree, and the effort and failure to agree should have been pleaded. (*Lincoln* v. *Colusa Co.*, 28 Cal. 663; *San Francisco etc. W. Co.* v. *Alameda W. Co.*, 36 Cal. 639; *Gilmer* v. *Lime Point*, 19 Cal. 47; *Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 324; *Mahoney* v. *Supervisors*, 53 Cal. 385; *Lake Shore etc. R. R. Co.* v. *Cincinnati etc. R. R. Co.*, 116 Ind. 578; Dillon on Corporations, sec. 470, note; Lewis on Eminent Domain, 301; *Harper* v. *Richardson*, 22 Cal. 254.) No latitude of pleading can be allowed the plaintiff in a condemnation proceeding. The statute must be strictly construed. (*Dalton* v. *Water Comm'rs*, 49 Cal. 222; *Southern Pac. R. R. Co.* v. *Wilson*, 49 Cal. 397; *Murphy* v. *De Groot*, 44 Cal. 52; *San Francisco etc. W. Co.* v. *Alameda W. Co.*, 36 Cal. 644; *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 247–258; *Stanford* v. *Worn*, 27 Cal. 172.) The court in condemnation proceedings acts with limited and statutory jurisdiction. (*Cal. P. R. R. Co.* v. *C. P. R. R. Co.*, 47 Cal. 549; *Gilmer* v. *Lime Point*, 19 Cal. 47; *De Witt* v. *Duncan*, 46 Cal. 343; *Spencer Creek W. Co.* v. *Vallejo*, 48 Cal. 70.) There was no evidence showing the indispensable character of the proposed work, and the court erred in denying the appellants' motion for a nonsuit. "Necessary," as used in the statute, means indispensable, and not merely convenient. (*Spring V. W. W.* v. *San Mateo W. W.*, 64 Cal. 126; *S. P. R. R. Co.* v. *Raymond*, 53 Cal. 228; *Wilmington etc. Co.* v. *Dominguez*, 50 Cal. 505; *New York C. etc. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 326; *Kohl* v. *U. S.*, 91 U. S. 367.) There was no evidence that the taking was necessary. (Code Civ. Proc., sec. 1241, subd. 2.) There was no evidence that the proposed sewer was a more neces-

sary public use than the one already existing; namely, that of a public road. (Code Civ. Proc., sec. 1241, subd. 3.) This was a distinct issue raised in appellants' answers. There was no evidence that the route proposed was most compatible with the greatest public good and the least private injury. (Code Civ. Proc., sec. 1242.) There was no evidence that the trustees of the city of Pasadena had directed proceedings to be taken under section 1237 of the Code of Civil Procedure to procure a right of way. (See Municipal Corporation Act, sec. 870.) The trustees could only "direct" its officers by an official act. (See, as to transaction of business, Municipal Corporation Act, sec. 859.)

*Haynes & Mitchell*, for Respondent.

The amendment of 1889 rendered it unnecessary to allege in the complaint to what class of municipal corporations the plaintiff belonged. (Stats. 1889, p. 372.) Even if it were necessary that the class to which the plaintiff belonged should be shown, still the court could take judicial notice of it, in the absence of proof. (Code Civ. Proc., sec. 1875. See *Staude* v. *Election Comm'rs*, 61 Cal. 313; *Wetherbee* v. *Dunn*, 32 Cal. 108; *People* v. *Williams*, 64 Cal. 87.) The termini, route, and the line of the proposed sewer were sufficiently definite. (*California etc. R. R. Co.* v. *S. P. R. R. Co.*, 67 Cal. 61.) The power of the city to condemn a right of way for sewer purposes is not dependent upon section 870 of the Municipal Corporation Act, but is expressly granted by the general law governing the exercise of the power of eminent domain, and existed before that act was passed. (Code Civ. Proc., sec. 1237.) The right of eminent domain appertains to every independent government, and requires no constitutional recognition. The clause found in the constitutions of the several states providing for just compensation for property taken is a mere limitation upon the exercise of the right. (*Boom Co.* v. *Patterson*, 98 U. S. 406; *U. S.* v. *Jones*, 109 U. S. 518.) In this state, by a general statute of uniform application, the legislature has con-

ferred the power upon "any person," and declared that it may be exercised in the manner provided by the statute. (Civ. Code, sec. 1001.) "Any person" includes a corporation. (Civ. Code, sec. 14; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; 45 Am. Rep. 659.) The city of Pasadena, as a person within the meaning of section 1001, Civil Code, is exercising the right thereby expressly conferred as an agent of the state in behalf of a use expressly declared to be a public use, and it is proceeding in the manner expressly provided by law. (Code Civ. Proc., sec. 1243.) The construction contended for by the appellants, that the effort to agree is a condition precedent to the right of the city to maintain the action, and must therefore be pleaded and proved, violates the provision of the constitution prohibiting special legislation. (Const., art. IV., sec. 25; *People* v. *C. P. R. R. Co.,* 83 Cal. 404. See also *Burt* v. *Brigham,* 117 Mass. 307; *Ætna Mills* v. *Waltham,* 126 Mass. 422.) Applying the rule that legislation which relates not to any genus, but only to species, is special legislation, to municipal corporations, it is evident that the genus is not included, but only a species; viz., cities of the sixth class. (*People* v. *C. P. R. R. Co.,* 83 Cal. 404. See also *Earle* v. *Board of Education,* 55 Cal. 489; *Miller* v. *Kister,* 68 Cal. 142; *San Francisco* v. *S. V. W. W.,* 48 Cal. 493; *Dundee M. T. I. Co.* v. *School District No. 1,* 10 Saw. 52; *Manning* v. *Klippel,* 9 Or. 367.) The construction contended for by the appellant also contravenes the section of the constitution which provides that all laws of a general nature shall have a uniform operation. (Const., art. I., sec. 2; *Brooks* v. *Hyde,* 37 Cal. 366; *People* v. *Scoggins,* 37 Cal. 691.) Under the code provisions, "all persons" stand in the same relation to the exercise of the right of eminent domain; and therefore to deny to one the benefit of this right, upon the same terms which it grants to others, clearly defeats the uniform operation of the law, and violates the constitution. (*Ex parte Smith and Keating,* 38 Cal. 710; *People* v. *Scoggins,* 37 Cal. 691; *Brooks* v. *Hyde,* 37 Cal. 366; *People* v. *Henshaw,* 76 Cal. 443.) Of the

necessity or expediency of exercising the right of eminent domain in the appropriation of private property to public uses, the opinion of the legislature, or of the corporate body or tribunal upon which it has conferred the power to determine that question, is conclusive upon the courts, since such a question is essentially political in its nature, and not judicial. (2 Dillon on Municipal Corporations, 2d ed., sec. 465; *Giesy* v. *R. R. Co.*, 4 Ohio St. 325; *Varick* v. *Smith*, 5 Paige, 137; *S. & V. R. R. Co.* v. *Stockton*, 41 Cal. 168; *Lux* v. *Haggin*, 69 Cal. 303, 304; Cooley's Constitutional Limitations, 488.) The necessity for taking private property for public use by a municipal corporation need not be specially declared; it is implied in their action. (2 Dillon on Municipal Corporations, secs. 466, 467.) The proceedings having been commenced by the city attorney and special counsel, and it appearing that the commencement of the proceedings was with the knowledge of the municipality, proof that the trustees directed the commencement thereof is not necessary, as their authority will be presumed. (*Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; *S. F. Gas. Co.* v. *S. F.*, 9 Cal. 453; Dillon on Municipal Corporations, 4th ed., sec. 463; *Hoyt* v. *Thompson*, 19 N. Y. 218; *Clark* v. *Lyon Co.*, 8 Nev. 181; *Peterson* v. *Mayor etc.*, 17 N. Y. 453.)

*A. R. Metcalfe,* and *F. J. Polley,* also for Respondent.

Beatty, C. J. — Proceeding under sections 1237 et seq. of the Code of Civil Procedure to condemn a right of way for an outfall sewer from the city of Pasadena to a tract of land outside of the city limits known as the sewer farm. Appeal by defendants from a decree of condemnation..

The city of Pasadena, — a municipal corporation in the county of Los Angeles, — for the purpose, as it alleges, of promoting the health, comfort, and convenience of its inhabitants, is engaged in constructing a system of sewerage, whereby it proposes to discharge the city sewage upon a farm distant about four and a half miles from the city limits. It has obtained from the county of Los

Angeles the right of way for the necessary outfall sewer along certain county roads from the boundaries of the city to a point at or near the intersection of the Monterey road and Garfield Avenue, which is the principal or one of the principal streets of the neighboring town of Alhambra. From this point the proposed route of the sewer is along said Garfield Avenue east of its center line, through the town of Alhambra, to another county road, and thence along said road to the sewer farm.

This proceeding is against the owners of lots fronting on the east side of Garfield Avenue, who, in support of their appeal from the decree of condemnation, assign numerous errors in the rulings of the superior court. They contend that the court erred in overruling their demurrer to the complaint, in denying their motion for a nonsuit, in admitting and excluding testimony at the trial, in permitting an amendment of the complaint after the plaintiff had closed its case, and in instructing the jury. Under each of these heads various particulars are specified. We shall not, however, be compelled to notice these separate points *seriatim*, as our views with respect to one or two general propositions will dispose of most of them, either by deciding them or demonstrating their immateriality.

One main proposition upon which the appellants rely is, that a municipal corporation of the fifth or sixth class must, as a condition precedent to invoking the exercise of the power of eminent domain, make an unavailing effort to agree with the owner of the property or right which it seeks to acquire, and consequently that it must, in any condemnation proceeding, allege and prove that it has made such effort.

The complaint in this case contained no allegation as to the class of corporations to which the plaintiff belongs, nor did it contain any allegation of an effort to agree. On the trial, no evidence was offered to show how plaintiff was incorporated, — whether by special charter or under the general law, — nor to what class it would belong if incorporated under the general law; but the

court, without evidence, took notice of the fact that Pasadena is a city of the sixth class, duly incorporated under the general law. (Stats. 1883, p. 93.)

By section 870 of that law, which is one of the sections relating to cities of the sixth class, it is provided as follows: " Whenever it shall become necessary for the city or town to take or damage private property for the purpose of establishing, laying out, extending, and widening streets and other public highways and places within the city or town, or for the purpose of rights of way for drains, sewers, and aqueducts, and for the purpose of widening, straightening, or diverting the channels of streams and the improvement of water fronts, and the board of trustees cannot agree with the owner thereof as to the price to be paid, the trustees may direct proceedings to be taken under section 1237 and following sections, to and including section 1263, of the Code of Civil Procedure to procure the same."

The defendants, relying upon the condition mentioned in this section, — an inability to agree with the owner, — demurred to the complaint, specially, for uncertainty because it did not set forth the manner in which plaintiff was incorporated, nor to what class of corporations it belonged, and, generally, on the ground that it did not state sufficient facts, because, assuming that it was a corporation of the sixth class, it did not allege an effort to agree. They also moved for a nonsuit at the close of plaintiff's case, upon the ground, among others, that there was no evidence of an effort to agree.

From this statement it is apparent that all these various points arising upon the orders of the court overruling the demurrer and denying a nonsuit will be effectually disposed of if it is held that the plaintiff was not bound to make an effort to agree with the owners of the land before instituting its proceeding to condemn.

There is no doubt of the authority of the legislature, in regulating the exercise of the power of eminent domain, to make an unavailing effort on the part of the person in charge of the use to agree with the owner of

the property it seeks to acquire a condition precedent to the institution of any proceeding to condemn, and there is no doubt that an intention to impose such a condition has been inferred in many instances in this state and elsewhere from language no stronger than that which is contained in section 870 of the Municipal Incorporation Act, above quoted; so that if the solution of the question before us depended solely upon the construction of that section, we should have no hesitation in holding that the superior court erred in overruling the demurrer and the motion for a nonsuit. But there is a question whether said section, in the sense in which appellants seek to apply it, is constitutional; whether, in other words, it is not a special law, by which the legislature has attempted to make a forbidden discrimination against two classes of municipal corporations by imposing upon them alone a burdensome condition to the exercise of a right common to all public and private corporations and to all natural persons *sui juris* in the state.

By section 1001 of the Civil Code it is provided as follows: "Any person may, without further legislative action, acquire private property for any use specified in section 1238 of the Code of Civil Procedure, either by consent of the owner or by proceedings had under the provisions of title 7, part 3, of the Code of Civil Procedure; and any person seeking to acquire property for any of the uses mentioned in such title is 'an agent of the state,' or a 'person in charge of such use,' within the meaning of those terms as used in such title."

A corporation, whether private or public, is a person. (Civ. Code, sec. 14.) It follows, therefore, that, under this general law, — general in the widest and fullest sense of the term, — any public or private corporation, or any natural person, may, for any of the uses defined in section 1238 of the Code of Civil Procedure, acquire private property without the consent of the owner, by means of the proceedings prescribed in part 3, title 7, of said code, sections 1237 to 1263. It is conceded that

there is no provision in this law requiring a previous effort to agree; and, apparently, it is not controverted that every person in the state, natural and artificial, is exempt from such condition, excepting only municipal corporations of the fifth and sixth classes.

Can the legislature make such a discrimination?

"All laws of a general nature shall have a uniform operation." (Const., art. I., sec. 2.)

"The legislature shall not pass local or special laws in cases where a general law can be made applicable." (Const., art. IV., sec. 25.)

It seems to us perfectly clear that the clause of the incorporation act requiring cities of the fifth and sixth classes to make an effort to agree, while all other persons are exempt from such condition, is in plain and direct conflict with both of these constitutional inhibitions. It destroys the uniform operation of a general law, and is special in a case where a general law not only can be made applicable, but in which a general law had been enacted, and in which there is no conceivable reason for discrimination.

It is true that the legislature is empowered by section 6 of article XI. of the constitution to classify cities and towns in proportion to population for the purpose of incorporation and organization, and it is undoubtedly true that a law limited to these purposes is not unconstitutional because it makes different regulations for the different classes. But the mode of exercising the power of eminent domain, and the conditions upon which it may be invoked, are no part of municipal organization. They are the subject of general laws applicable to every person alike, and the legislature has no power to make arbitrary discriminations in this respect between different classes of persons.

We do not regard the decision in *People* v. *Henshaw*, 76 Cal. 442, as being at all in conflict with this view. The only point involved in that case that touches the question under discussion was made in support of the proposition that the Whitney act, so called, was local

and special, for the reason that it applied to some cities, and not to others. The author of the prevailing opinion answered this point by reference to the power conferred upon the legislature by the ........ltion to classify cities and towns according to population. He assumed that the class of cities to which the Whitney act was made applicable was identical with the second class as defined in the general incorporation act, and upon that assumption concluded that as cities having a large population require different legislation from those containing fewer inhabitants, the Whitney act, though applying to only one class, was nevertheless constitutional. But it must be borne in mind that the subject of the Whitney act (a police court) was peculiarly a matter pertaining to municipal organizations, and still more peculiarly a matter as to which cities of large population require different provision from that suitable to cities or towns of small population.

It is to be observed, also, that the care taken by the court to distinguish *People* v. *Henshaw*, 76 Cal. 442, from those cases in which laws had been held unconstitutional on account of arbitrary discriminations between persons standing in the same relation to the subjects of legislation is an emphatic recognition of the doctrine we have announced.

Neither is the vaccination case (*Abeel* v. *Clark*, 84 Cal. 226) opposed to our views. A single expression in the commissioner's opinion in that case, separated from its context, and considered without reference to the point to be decided, might seem to warrant the proposition for which appellants are contending here; viz., that a law is not special if it applies equally to all members of any single class defined by the legislature, no matter how arbitrary and senseless the classification may be.

But it is a familiar rule that expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration, and that they cannot be safely applied in their largest and most universal sense to dissimilar cases.

Now, in *Abeel* v. *Clark*, 84 Cal. 226, the court was considering the constitutionality of a law making previous vaccination a condition of admission to the public schools of the state. The public schools are an institution the existence of which is recognized by the constitution itself. Those who attend the public schools stand in a relation to the institution different from that of persons who do not attend. This difference exists independent of legislation. In the nature of things, attendance upon the public schools must be subject to regulations necessary for the safety and welfare of the whole body of pupils; and a law which applies equally to all who seek admittance is in the fullest sense a general law, because it applies to all who bring themselves into the same relation with the state. There is a broad and palpable distinction between such a law and one which annexes to the exercise of a universal right by a particular class of persons, arbitrarily selected, conditions from which all other persons similarly situated are exempt. This distinction is, I think, clearly recognized in *Ex parte Smith and Keating*, 38 Cal. 710, and is entirely consistent with the decision in *Brooks* v. *Hyde*, 37 Cal. 366, where it was held that laws must operate uniformly upon all persons standing in the same relation to the law, in respect to the privileges and immunities conferred by it, or the acts which it prohibits. In *Earle* v. *Board of Education*, 55 Cal. 489, and in *Miller* v. *Kister*, 68 Cal. 142, the decision went upon the ground that the legislature has no power to exempt classes of persons, arbitrarily defined, from the operation of a general law, and these cases were both carefully distinguished from *People* v. *Henshaw*, 76 Cal. 442, in the prevailing opinion in that case.

The conclusion is, that although a law is general and constitutional when it applies equally to all persons embraced in a class founded u₁₋ ᵒᵐe natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes

peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. From this conclusion it necessarily follows that cities of the fifth and sixth class, equally with all other natural and artificial persons, may maintain proceedings to condemn private property for public use without a previous effort to agree.

In reaching this conclusion we have not overlooked the argument of appellants that since the plaintiff in such proceedings is always a mere agent of the state, and acting in its behalf, he cannot question the conditions upon which his principal authorizes him to act. We think this rather a fanciful argument, and that it is based upon a supposed analogy which has no real existence. It is, in a very modified sense, that the state is the principal and the plaintiff the agent in cases like this. Such may be the theoretical view, but, practically, it is the reverse of the truth. The party directly and beneficially interested is the person in charge of the use, or the particular community affected by the improvement, and the attitude of the state is merely passive. The law is designed for the benefit of local communities, and they have a right to enjoy it on equal terms.

Another ground upon which it is contended that the superior court erred in overruling the demurrer to the complaint is, that the complaint does not show with certainty, so that the same may be identified, the location of the general route or the termini, or either of them, of said sewer.

But the complaint does clearly show that the termini of the sewer are the city of Pasadena and the sewer farm, which is described as consisting of certain subdivisions of the government survey. It also shows not only the general route, but the particular route, and is accompanied by a map of so much of the route as is involved in this proceeding. (Code Civ. Proc., sec. 1244, subd. 4.)

The particular specifications of insufficiency under this head seem to rest upon the points,—1. That the exact spot at or near the intersection of the Monterey road and Garfield Avenue to which the outfall sewer has already been constructed is not described in the complaint or delineated on the map; 2. That the *name* of the county road from the opposite extremity of Garfield Avenue to ᶜan Marino Avenue is not given; and 3. That "*along  nd east of the center line*" of the avenue is not a suffic ntly exact description of the location of the proposed  wer.

We think these objᵣctions are without merit. There is no law and therᵉ is no reason requiring such minute exactitude in th  ᵊ particulars.

One ground of the motion for the nonsuit was, that the necessity of the proposed sewer had not been shown.

The legislature has defined the public uses for which private property may be taken, and, among others, is "sewerage of any incorporated city, city and county, or of any village or town, whether incorporated or unincorporated," etc. (Code Civ. Proc., sec. 1238, subd. 8.)

When a city or town decides for itself—as it may do — that a sewer is desirable, it is not bound to prove that such sewer is necessary, but only that the taking of the property it seeks to condemn is necessary for the construction of the sewer. When it shows that the use to which the property is to be applied is a public use (and that is shown by the statute in this case), the inquiry on that head is closed. (Code Civ. Proc., sec. 1241.) But the point of the objection here is, that it does not appear from any official record of the proceedings of the board of trustees of Pasadena that they have ever adopted the plan of an outfall sewer from the city to the sewer farm. We think, however, that the terms of the two ordinances, Nos. 66 and 69, the matters submitted to the vote of the people, and the result of the voting contain ample proof of the adoption of the system of sewerage described in

the complaint. The first ordinance declares the necessity, among other things, of acquiring, constructing, and completing a system of sewers, and of borrowing money for the purpose. The second ordinance recites the passage and substance of the first, sets forth in detail the system of surveys which has been adopted, embracing the sewerage farm, and proceeds: "4. Outfall sewer to be located on Garfield Avenue, or any other street, to the track of the Southern Pacific Railway Company, south of Alhambra, thence running in a southeasterly direction to the sewerage farm." After setting forth the full details of the various proposed improvements, and an itemized estimate of their cost, the ordinance provides for a special election, at which the question of issuing bonds of the city shall be submitted. The evidence shows that such election was regularly held, and resulted in a vote of 197 for and 5 against the proposition. This, we repeat, furnishes ample proof of the adoption of the system described in the complaint. It was not necessary that the ordinance should be more specific than it was as to the route of the sewer from the city to the sewer farm. Indeed, it would have been improper for the city and its electors to tie themselves to a particular route, if, as appellants contend, the final selection of a route does not rest with them.

Another ground of the motion for a nonsuit was, that the proposed sewer will be a nuisance affecting injuriously the health of the people of Alhambra, and that there was no evidence tending to show that the proposed route along Garfield Avenue was most compatible with the public good and least injurious to private rights.

There was no evidence that the sewer, as it was proposed to construct it, would be more of a nuisance than any sewer would be. So far as appears, the sewer was well planned, according to current sanitary views. Certainly there was nothing tending to show that it was an improper kind of sewer, and therefore it could not be regarded as a nuisance per se. A sewer in the neighbor-

hood of dwellings may be an evil, but it is evident that the legislature regards it as a necessary evil, since it allows private property to be taken for the construction of sewers.   Sewers are in fact a necessary evil; but when they are planned and constructed with reasonable regard to the results of sanitary teachings, they are authorized by statute, and "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."   (Civ. Code, sec. 3482.)

In short, the plaintiff, being a city with sewage to dispose of, and having a sewer farm to which it has apparently a right to conduct it, has necessarily the right to construct such a sewer as the statute, section 1238 of the Code of Civil Procedure, contemplates, and such a sewer cannot be a nuisance, in the strict sense of the term. That it may occasion loss or injury to others for which they will be entitled to compensation is a different proposition, which will be considered in another connection.

We do not think a failure to prove that the location of the sewer was most compatible with the greatest public good and least private injury was a ground for a nonsuit.

The state, or its agents in charge of a public use, must necessarily survey and locate the land to be taken, and are by statute expressly authorized to do so.   (Code Civ. Proc., sec. 1242.)   Exercising, as they do, a public function under express statutory authority, it would seem that in this particular their acts should, in the absence of evidence to the contrary, be presumed correct and lawful.   The selection of a particular route is committed in the first instance to the person in charge of the use, and unless there is something to show an abuse of the discretion, the propriety of his selection ought not to be questioned; for certainly it must be presumed that the state or its agent has made the best choice for the public, and if this occasions peculiar and unnecessary damage to the owners of the property affected, the proof of such damage should come from them.   And we think

that when an attempt is made to show that the location made is unnecessarily injurious, the proof ought to be clear and convincing; for otherwise no location could ever be made. If the first selection made on behalf of the public could be set aside on slight or doubtful proof, a second selection would be set aside in the same manner, and so *ad infinitum.* The improvement could never be secured, because whatever location was proposed, it could be defeated by showing another just as good.

We think there was no error in denying the motion for nonsuit.

As to the alleged insufficiency of the evidence to sustain the judgment, we find no specification of particulars in the bill of exceptions, and do not think such specifications can be made for the first time in the brief of counsel, even if they could be reviewed in the absence of a motion for a new trial.

But waiving this objection, we do not think any of the exceptions of the appellants to the sufficiency of the evidence are valid.

1. It is not necessary to prove the incorporation of the plaintiff. Being a city or town of eight thousand inhabitants, it was immaterial whether the plaintiff was incorporated or not; and if it had been material, the court was correct in taking notice of the fact without proof, and even without averment. Here, however, it was averred. (Stats. 1889, p. 372.)

2. This point, that there was no evidence that the taking was necessary, has been disposed of.

3. It was clearly shown that the sewer, when constructed, would not interfere with the use of the highway, and that during its construction such use would not be seriously interrupted. Therefore it was not necessary to show that the new use was superior to the one to which the property was already appropriated. Section 1241, subdivision 3, of the Code of Civil Procedure has no application to a case where the same land can be subjected to a second servitude without disturbing the first.

4. This point, that there was no evidence that the route proposed was most compatible with the greatest public good and least private injury, has already been discussed, and we have held that, as to this matter, the burden of proof is on the defendants.    We cite, as bearing upon this point, *New York & Harlem R. R. Co.* v. *Kip*, 46 N. Y. 553; 7 Am. Rep. 385.

5. It is objected that there is no evidence that the trustees of the city of Pasadena directed the commencement of these proceedings.    But the proceeding was commenced by the city attorney and special attorneys for the city, whose authority need not be shown, unless properly drawn in question.    The attorney for a party is never required to prove his retainer or his instruction to commence a proceeding, unless his authority is directly attacked; and this rule is just as applicable to suits instituted in the name and on behalf of municipal corporations as to suits by private corporations or natural persons.

Besides, there is abundant proof of circumstances tending to show that if the attorneys of plaintiff were not formally authorized in advance by resolution of the board of trustees to commence this proceeding, their action in so doing has been fully ratified.

As to the alleged errors in the rulings of the court upon offers of evidence, most of them have been disposed of in what has been already said.    Some, however, remain to be noticed.

It is unnecessary to decide whether the court erred in permitting the amendment to the complaint relating to man-holes.    If it was an error, we cannot see how defendants were injured by it, unless it operated as a surprise, which entitled them to a continuance.    But it does not appear that they asked for any continuance on that ground, and it is to be presumed they were entirely willing to go on with the trial under the amended complaint.

But we think the superior court did err in striking out the evidence offered by the defendants of damages to abutting property.

This ruling was made after the amendment to the complaint just referred to. The original complaint did not specify the character of man-holes with which the proposed sewer was to be furnished, but it seems to have been assumed at the trial that perforated man-holes, designed for ventilation of the sewer, were to be constructed, and the defendants introduced testimony of experts to prove that through these man-holes sewer-gas would escape and flow over the adjoining premises, producing effects certainly offensive, and probably dangerous.

In view of this testimony, and for the purpose of obviating its effect, the plaintiff offered and was allowed to amend its complaint by adding the following: " That in the construction of said sewer along Garfield Avenue from the Monterey road to the line of the Southern Pacific railroad, man-holes will be constructed at reasonable distances, for the purpose of necessary repairs, or removing obstructions from the sewer; but such man-holes are to be constructed in such manner and so closed as to prevent the escape of noxious gases and odors, unless temporarily in making such necessary repairs, or in removing obstructions from the sewer, and for such time only as may be reasonably necessary for such purpose."

The court thereupon struck out all the evidence of damage from sewer-gas, and by various rulings held that no question as to damages to adjoining property remained in the case, and instructed the jury to find a verdict for nominal damages to the land to be taken for the laying of the pipe.

The error in this ruling did not, however, consist, as appellants contend, in assuming that the plaintiff could and would construct such a sewer as it described; for in this proceeding the plaintiff can acquire no right to construct any other sort of a sewer, and by the decree its right is strictly limited to the laying of a sewer in exact accordance with the specifications contained in the complaint. The court was so far right, therefore, in holding, as it did in effect, that the damage to the defendants could not be estimated upon the assumption that the

sewer, when constructed, would cause greater discomfort or inconvenience than the sewer described in the complaint and in the decree. The plaintiff, in order to justify its future proceedings under any decree of condemnation in this suit, must construct its sewer in accordance with the terms of the decree, and it must operate it in a careful, skillful, and proper manner. If it does not, it will be liable for damages for its neglect in these particulars, and the persons damaged, though parties to this proceeding, will not be concluded by the damages allowed herein. (Lewis on Eminent Domain, secs. 481, 482; 1 Rorer on Railroads, 323, 324.)

The error of the court was in assuming that no damage to abutting property could arise from the construction and proper operation of the sewer proposed. The temporary escape of sewer-gas, during the time reasonably necessary for making repairs to the sewer or removing obstructions, may occasion substantial injury. At least, it cannot be said, as matter of law, that it will not, and therefore it was error to strike out the testimony adduced by the defendants as to the offensive and dangerous properties of sewer-gas, and to instruct the jury to find merely nominal damages.

The court did not err in excluding evidence that the proposed sewer was to be used by the Raymond Hotel. The use is none the less a public use because the city has arranged to allow a hotel outside the corporate limits to share in the benefit of its improvement.

We think the court erred also in excluding the testimony of Gervaise Purcell. It would certainly have tended to prove that the route selected for the proposed sewer was not so good as one that might have been selected, and that it would cause a greater private injury. The offered testimony was to the effect that the witness had surveyed a route 1,432 feet shorter than that proposed, upon a better grade, through lands not thickly settled.

We do not say that this testimony would have been conclusive, but it was competent and relevant to a mate-

rial issue in the case, and should have been admitted, subject to the right of the plaintiff to introduce evidence in rebuttal.

The superior court did not err in excluding the testimony offered for the purpose of showing that the sewer farm would become a nuisance by being made the receptacle of the sewerage of Pasadena.

That is a question not involved in this proceeding. If the sewer farm ever becomes a nuisance, the decree in this proceeding will not stand in the way of its abatement.

Neither did the court err in refusing the request of certain defendants to decree to the plaintiff a limited use of the sewer in common with those whose lands were to be taken. The pleadings and proofs in the case would not have justified such a decree.

For the errors above specified, the judgment is reversed, and the cause remanded for a new trial.

SHARPSTEIN, J., DE HAVEN, J., HARRISON, J., PATERSON, J., and GAROUTTE, J., concurred.

MCFARLAND, J., concurring. — I concur in the judgment of reversal, for the reasons which are given for such reversal in the opinion of the chief justice; but I am not prepared to concur in the whole of said opinion.