[L. A. No. 381.   Department One.—September 21, 1898.]

JOHN WIGMORE, Respondent, v. R. T. BUELL, Appellant.

Constitutional Law—Uniform Operation of General Laws.—
Section 11 of article I of the state constitution, requiring all
laws of a general nature to have a uniform operation, is satis-
fied when the law operates uniformly upon all persons standing
in the same category, and upon rights and things standing in
the same relation.

Id.—Former Constitution—Local and Special Legislation.—The
power of the legislature, under the former constitution, to pass
local and special laws, included the power to make them apply
to special objects, and to introduce different remedies from
those pointed out in the Code of Civil Procedure, and to disre-
gard exemptions claimed under the general law.

Id.—Act Concerning Trespassing Animals—Attachment—Exemp-
tion.—The act of March 7, 1878 (Stats. 1878, p. 176), "concerning
trespassing animals upon private lands in certain counties," et
cetera, does not violate section 11 of article I of the constitu-
tion; nor is it unconstitutional because it gives an attachment
for a trespass without an affidavit, nor because it subjects tres-
passing animals to attachment which are exempt from execu-
tion under the general laws.

Attachment of Trespassing Animals—Remedy by Distraint—
Lien—Construction of Statute.—The act of March 7, 1878,
concerning trespassing animals, must be construed to carry out
its obvious purpose to afford the owner of the land trespassed
upon a speedy and summary remedy. The remedy by distraint
of the animals is to be construed as confined to the period of
two days; and it does not preclude the remedy by attachment
thereafter, upon the ground that the plaintiff who has dis-
trained has a continuing lien upon the animals.

Id.—Form of Action—Custody of Law.—The statute gives to the
plaintiff the remedy by attachment, whether he proceeds by ac-
tion in personam against the owner if known, or in rem against
the trespassing animals, if the owner is unknown; and, in either
case, the attached animals pass into the custody of the law.

Id.—Undertaking on Attachment.—An undertaking on attach-
ment for a greater sum than that required by law is not objec-
tionable.

Id.—Conformity of Writ to Complaint—Cost of Future Keep-
ing.—The writ of attachment substantially conforms to the
amount claimed in the complaint, where it states the amount
of damages alleged and the alleged cost of keeping the animals
by plaintiff for the period of two days, although the complaint
prays for a specified sum per day as expense of future keeping.
Such expense is but costs of suit, to be determined by the court,

for the keeping by the sheriff, who obtains the legal custody of the animals under the attachment, and need not be alluded to in the writ. If the plaintiff has the possession after the statutory two days, it must be as keeper for the sheriff.

APPEAL from an order of the Superior Court of Santa Barbara County refusing to dissolve an attachment. W. B. Cope, Judge.

The facts are stated in the opinion.

Richards & Carrier, for Appellant.

John J. Boyce, for Respondent.

CHIPMAN, C.—Appeal from an order refusing to dissolve an attachment issued in favor of plaintiff in an action brought under the act entitled, "An act concerning trespassing animals upon private lands in certain counties of the state of California," approved March 7, 1878. (Stats. 1878, p. 176.) The appeal is here by bill of exceptions, which contains the complaint, writ of attachment, undertaking on attachment, motion to dissolve attachment, order of refusal, and notice of appeal.

The complaint avers that plaintiff is the owner and was in the lawful possession of certain land in Santa Barbara county; that defendant is the owner of certain livestock (describing it); that prior to November 24, 1895, said animals, without plaintiff's consent, entered and trespassed upon the said lands of plaintiff, to his injury in the sum of five hundred dollars; that the value of said animals is two thousand five hundred dollars; that pursuant to the act above referred to plaintiff "did distrain and take into his possession said trespassing animals and has kept the same since November 24, 1895. And in pursuance of said act plaintiff has now sought legal proceedings under said act to recover damages," et cetera; that "upon taking up said animals . . . . plaintiff made the necessary inquiries as to the ownership of said animals, and . . . . that said animals are the property of . . . . defendant"; avers the cost of keeping to be seventy-six dollars and fifty cents per day, and that they are now in plaintiff's possession, and prays judgment for damages and cost of keeping and of suit. The complaint was verified and filed November 26, 1895. On the same day, an undertaking

was filed and a writ of attachment was sued out and was served by the sheriff on the 27th by levying on the animals mentioned in the complaint. No affidavit in attachment was filed.

The act of 1878 declares it to be unlawful for any animal, the property of any person, to enter upon the land of another. (Sec. 1.) The person entitled to possession of the land, trespassed upon in violation of the act, may recover from the owner of the trespassing animals "all damage sustained by reason of such trespass, together with costs of suit." (Sec. 2.) For the purpose of allowing the plaintiff a better security for the payment of any judgment he may recover in actions brought under the first two sections of this act, all the provisions of the Code of Civil Procedure of this state relating to attachment process shall apply to such actions, subject only to the modifications herein contained, to wit: Instead of filing the affidavit required by sections 538 and 866 of said code, the plaintiff is entitled to the issuance of a writ of attachment against the property of the defendant upon filing his complaint stating a cause of action, verified according to the law concerning the verification of pleadings." (Sec. 3.) The act declares that no trespassing animal shall be exempt from attachment or sale, et cetera. (Sec. 4.) If the ownership is unknown, "then in that case the trespassing animals shall also be liable for all damage done by such trespass," and points out how the right may be enforced by an action *in rem*. (Secs. 5-9.) "The plaintiff may procure an attachment against the property defendant in an action *in rem* under this act, in the same manner as in cases where the owner is sued, and the undertaking on attachment shall inure to the benefit of the owner of the property defendant if the plaintiff fail to recover in the action." (Sec. 10.) "Any person injured by a violation of section 1 of this act may, at his option, distrain and take into his possession any trespassing animal, . . . . and keep the same two days without instituting legal proceedings under this act, so that he may have proper time in which to make the necessary inquiries as to the ownership of the animals and determine which remedy given herein he is entitled to," and provision is made for the owner of the distrained animals to take the property upon giving a bond upon certain conditions. (Sec. 13.)

"In all other matters than those in which a different rule is here-in prescribed" the Code of Civil Procedure shall govern. (Sec. 14.) It is provided by section 15 that "whenever any animal is distrained under section 13 . . . . the distrainer shall be enti-tled to recover reasonable compensation for care and feed of such animal . . . . ; and in actions brought under provisions of this act, when the plaintiff recovers, then a reasonable sum for keep-ing any animal levied upon by attachment process or under execution shall be allowed as costs of suit." The act is made to apply to certain counties only, among them Santa Barbara.

1. Appellant contends that the act is unconstitutional as vio-lative of article 1, section 11, of the old and new constitution, which declares that "all laws of a general nature shall have a uniform operation." The contention is, that the act is special legislation in that "it seeks to amend the codes which do and must, to be constitutional, act uniformly as to all territory and all persons or classes of persons."

There is nothing in the old constitution which forbids the legislature from passing either local or special laws, except in respect of the formation of corporations other than municipal. (*Brooks v. Hyde*, 37 Cal. 366.) The eleventh section of article 1, referred to by appellant, was held in *Brooks v. Hyde, supra*, to mean that every law shall have a uniform operation upon all citizens or persons or things of any class upon which it purports to take effect, and that it shall not grant to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all citizens. In *Pasadena v. Stimson*, 91 Cal. 238, we find nothing to support appellant's contention, for it was there said that a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction; and the case of *People v. Henshaw*, 76 Cal. 436, was referred to, where it was said: "In order to constitute the uniformity of operation specified in the constitution, it is not necessary that the general law must operate alike upon all the subjects or persons to which it applies, independent of all other considerations, but that it shall operate uniformly upon all persons standing in the same category, and upon rights and things in the same relation."

Our statutes are full of instances of the exercise of the power of the legislature to enact special laws under the old constitution.

The act is not unconstitutional because it gives an attach-- ment for a trespass and without an affidavit, thus introducing a remedy different from that pointed out in the Code of Civil Procedure subjecting animals, also exempt by general law from execution, to the attachment. The power to pass special laws must necessarily include the power to make them apply to special objects without their trenching upon the operation or resulting in the repeal of previously existing laws. (*Brodhead v. Milwaukee,* 19 Wis. 624; 88 Am. Dec. 711.)

The fact that the act disregards the exemptions claimed under the general law we do not think renders it unconstitutional. The remedy given by the act would in some cases be of little value if the animals could be reclaimed as exempt. We know of no reason why the legislature could not, nor why it should not, have given the remedy against the trespass of animals exempt from execution as well as those not so exempt. (*Wilcox v. Hemming,* 58 Wis. 144; 46 Am. Rep. 625.)

2. Appellant contends that the complaint does not state such cause of action as entitles plaintiff to the process of attachment. The point made, as we understand appellant, is that, except as to the provisions of sections 538 and 866 of the Code of Civil Procedure, all the other provisions of the code relating to attachment are expressly made applicable by section 3 of the act; for example, section 537 of the Code of Civil Procedure provides in the case of a resident debtor that it is a condition to the existence of the cause of action which will support the attachment that the demand be not secured by any mortgage or lien upon real or personal property, or pledge of personal property, et cetera. It is contended that at most the act of 1878 "simply added another character of action to that of contract for the direct payment of money (to wit, for trespass), but in no way dispensed with the condition that the demand should not be secured by another lien." We are cited to *Hill v. Grigsby,* 32 Cal. 56, to show that the lien referred to in section 537 is any valid lien, and that the courts are unauthorized to discriminate in favor of or against any particular kind of lien. It is

contended that the lien continues beyond two days under section 13; and can only be discharged by tendering the amount claimed as damage, or by an undertaking; and that no fair construction of the law gives both the lien by distraint and the attachment also.

Appellant's construction of the statute is that the act gives the right to sue either the owner of the animals *in personam* or the animals *in rem,* and gives as a collateral remedy the process of attachment as provided in the Code of Civil Procedure. In addition to these actions, any person injured may distrain the animals and take them into possession, and within two days must elect whether to proceed *in personam* if he knows the owner, and if not he must proceed *in rem.* If he acquires a lien by distress, he may enforce this lien in whichever action he is entitled to bring, whether *in personam* or *in rem,* and may recover in addition to his damages the expense and cost of his distraint. If he does not distrain, then, and only then, is he entitled to invoke the statutory process of attachment, and in such case he may recover the expense of keeping the animals as part of the costs.

Respondent claims that the act gives the landowner a right to distrain animals taken *damage feasant,* and detain them two days only, at the expiration of which time he must commence his action. He can then attach the animals in whichever form of action he brings, and thereafter his right of detention by distraint expires and the animals are in the custody of the law under the attachment only.

The obvious purpose of the act is to afford the owner of land trespassed upon a speedy and somewhat summary remedy by giving an action both against the owner if known and against the animals if he is not known, and the attachment against the property may be given in both cases. (Act 1878, secs. 3, 10.) An act should be given a construction, if it can be done within the rules of law, to carry out its obvious purpose. The right to distrain is an option given to the landowner which he may exercise for two days without instituting any legal proceedings whatever, the declared purpose being to enable the landowner during that period to ascertain the owner of the animals and to determine which remedy given by the act the landowner will resort to.

We cannot find any authority in the act for distraining the animals beyond the two days; nor can we find any lien given upon the animals by the distraint to secure any claim of damage except as given in section 15, under the provisions of which "reasonable compensation for care and feed" may be recovered "whenever any animal is lawfully distrained under section 13 .... during the time of such lawful distrainment." This lawful distrainment we think is confined to two days. It seems to us that if the legislature had intended to give the landowner authority to hold under distraint for an indefinite time and until he could obtain judgment in his action, there would have been no occasion for introducing the attachment feature of the act, and the limit of two days would seem to exclude the idea that any greater time was to be given for distraining the animals. The purpose of the attachment was to give the "plaintiff a better security for the payment of any judgment he may recover in actions brought under the first two sections of this act"; and we must presume that the same purpose was in the minds of the legislature in enacting section 10, and that the attachment in actions *in rem* was to better secure any judgment obtained under section 5 *et seq.* It may not be always convenient for the landowner to take upon himself the care and custody of the animals pending suit *in personam* or *in rem;* and the statute would seem to afford him the opportunity in both forms of action to relieve himself of that responsibility by resorting to attachment, in which case the animals would then pass into the custody of the law. There is in this state no common-law right in the owners of land to recover for the trespassing of animals on their land. (*Merritt v. Hill*, 104 Cal. 184.) The owner of land may ignore the trespass and turn the animals out upon the highway or return them to the owner without distraining or attaching, but he is not bound to do this in order to avoid the care and custody of the animals. When, however, he seeks the relief of the act, he must keep within its provisions and cannot be given any relief beyond them. Having no continuing relief by the distraint, the act in nowise conflicts with the code provision referred to by appellant denying an attachment when there is a lien. Appellant's contention would compel the landowner, where the owner of the animal is known as well as where not, to

personally hold in his possession the trespassing animals under the distraint or lose his lien, which we do not think comports with the purpose or language of the act.

Appellant urges that it is oppressive and unjust to give an attachment with its attendant costs as auxiliary to the lien of distrain. We cannot see that there would be much more cost to the owner of the animals in the one case than in the other. But the difficulty with the argument is, that the statute does not give a continuing lien by distraint and does give the attachment. We think the more just and reasonable construction of the statute, keeping in mind its object and purpose, is as we have given it.

3. It is claimed by appellant that the undertaking is not in conformity with the provisions of section 539 of the Code of Civil Procedure, for the reason that the claim recited therein is different from the amount claimed in the complaint. The bond recites that the plaintiff is about to commence an action for damages, costs of keeping, and costs of suit, et cetera, claiming that the sum of five hundred dollars is due from defendant. It then proceeds: "Now, therefore, we . . . . do . . . . undertake in the sum of one thousand dollars : . . . . that if the said defendant . . . . recover judgment in said action, the said plaintiff will pay all costs that may be awarded the said defendant and all damages he may sustain by reason of the said attachment not exceeding one thousand dollars." The complaint prays for five hundred dollars damages; one hundred and fifty-three dollars costs and expenses of keeping the animals (for two days), and for seventy-six dollars and fifty cents per day for keeping the same hereafter. We are referred to *Hisler v. Carr*, 34 Cal. 641, which holds that when the penalty is too small it is a fatal objection to the issuance of the writ. But this objection would not hold good if the bond is for a greater sum than required by law.

4. The objection that the writ states a different amount than that claimed in the bond we do not think well taken. Section 540 of the Code of Civil Procedure requires the writ to direct the sheriff to attach sufficient property to satisfy plaintiff's demand, "the amount of which must be stated in conformity with the complaint," etc. The writ states the amount to be six hundred and fifty-three dollars, besides costs of suit, which is the

amount of damage claimed (five hundred dollars), and two days expense of keeping (one hundred and fifty-three dollars). Whatever claim plaintiff would recover beyond this would be as costs of suit, for the sheriff, and not the plaintiff, has the legal custody of the animals. The amount of these costs is to be ascertained by the court. We think there is a substantial compliance with the statute in the bond and writ.

If plaintiff continues his possession of the animals, after the statutory two days, it must be as keeper for the sheriff, who has served the writ and has taken the property as appears in the record.

The order refusing to dissolve the attachment was correct, and should be affirmed.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order refusing to dissolve the attachment is correct and is affirmed.

Garoutte, J., Harrison, J., Van Fleet, J.