(March 17, 1913.)

## FALL CREEK SHEEP COMPANY, LTD., Appellant, v. THOMAS E. WALTON, Respondent.

[136 Pac. 438.]

TRESPASS—HOMESTEAD ENTRY—LIEN.

1. Where a homestead entry has been made and the land office has issued a certificate to the applicant and such entry is recognized as valid by the government, such certificate, under the provisions of sec. 5983, Rev. Codes, is *prima facie* evidence that the holder or assignee of such certificate is the owner of the land described therein, but this evidence may be overcome by proof that at the time of the location, or time of filing a pre-emption claim on which the certifi-

cate may have been issued, the land was in the adverse possession of the adverse party or those under whom he claims, or that the adverse party is holding the land for mining purposes.

2. In an action where two persons claim the title and right of possession of certain lands under entries made under the laws of the United States, one a mining location, the other a homestead entry, and the contest is solely between the two parties, and the government is not a party, and the evidence shows that a certificate has been issued upon the homestead entry, and it is further shown that said entry was recognized as legal by the Secretary of the Interior in a contest between the respective parties, this court will follow such decision and hold, as between the parties to the suit, that the homestead entryman has the right to protect his possession and occupancy of the land as against trespass upon the same.

3. Sec. 1280, Rev. Codes, is not repugnant to sec. 13, art. 1 of the constitution of the state, in that it provides for the taking of property without due process of law.

4. Secs. 1279, 1280 and 1281, Rev. Codes, provide that where a hog is found trespassing, the occupant or proprietor may take up the animal at the expense of the owner of such hog and hold the same until the payment of the expense and damages, and that a lien is given upon the hog, and sale is provided for upon due notice, and the procedure for the foreclosure of the lien; the proceedings are complete in themselves, and such provisions are not repugnant to the constitution or in conflict with any other statute of the state, and in no way deny to the owner of such hog the right to pursue such legal proceedings as he may desire for the purpose of protecting and enforcing his rights and in contesting such claim or lien in a proper proceeding.

5. Evidence in this case examined, and *held* that it supports the verdict of the jury.

APPEAL from the District Court of the Fourth Judicial District for Cassia County. Hon. C. O. Stockslager, Judge.

Action of claim and delivery. Judgment for defendant. Appealed. *Affirmed.*

S. T. Lowe, for Appellant.

It could not have been the intention of the legislature, in passing the law under which defendant claims to be the owner of the hogs in controversy, to authorize the occupant or proprietor of premises upon which hogs were found to be tres-

passing to take up such hogs and compel the owner thereof to pay any sum demanded as charges and damages, whether reasonable or not, and whether such damages were or were not sustained by the party taking up such hogs, or forfeit the title to such hogs, and if such was the intention of the legislature, such act is contrary to sec. 13, art. 1 of the state constitution; and also repugnant to the fourteenth amendment to the constitution of the United States, and therefore void and not enforceable. (*Pacific Mut. Life Co. v. Carter,* 92 Ark. 378, 123 S. W. 384, 124 S. W. 764; *St. Louis Iron Mountain & Southern Ry. Co. v. Wynne,* 224 U. S. 354, 32 Sup. Ct. 493, 56 L. ed. 799, 42 L. R. A., N. S., 102.)

No forfeiture by plaintiff of the hogs here in controversy has taken place, and therefore the motion of the plaintiff for an instructed verdict should have been sustained, and being denied, the verdict of the jury should be set aside. (*Rippetoe v. Feely,* 20 Ida. 619, 119 Pac. 465.) "Due process of law" means that every litigant shall have the right to have his case tried and determined under the rules of procedure, the same as are applied to other similar cases. (*Eagleson v. Rubin,* 16 Ida. 92, 100 Pac. 765, 23 L. R. A., N. S., 536.)

Where a statutory remedy is given, it must be strictly pursued and all common-law proceedings to the same end cease to be available. (*Shoenberger v. Baker,* 22 Pa. 398, 14 Morr. Min. Rep. 412.)

J. T. Fisher, T. D. Jones and D. C. McDougall, for Respondent.

The hogs in question were seized under secs. 1278–1282, inclusive, Rev. Codes. (*Sifers v. Johnson,* 7 Ida. 798, 97 Am. St. 271, 65 Pac. 709, 54 L. R. A. 785.)

A homesteader on public land, before he has received patent, may maintain an action for damages by reason of trespass thereon. (*Johnson v. Oregon Short Line R. Co.,* 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744.)

The holder of an incomplete, inchoate or floating title to public lands may maintain an action for trespass. (*Northern*

*Pac. Ry. Co. v. Hussey,* 61 Fed. 231, 9 C. C. A. 463; *Azcuenaga Bros. etc. Co. v. Corta,* 19 Ida. 537, 115 Pac. 18.)

Sec. 1281 of the code provides in the case at bar a complete due process of law established by our jurisprudence for the protection and enforcement of private rights, governed by the same rule as applied in all similar cases, and plaintiff is given the same right as every other person in similar cases, and his right is in no way abridged or circumscribed under the statute. (*Eagleston v. Rubin,* 16 Ida. 92, 100 Pac. 765, 23 L. R. A., N. S., 536; *Speer v. Stephenson,* 16 Ida. 708, 102 Pac. 365.)

STEWART, J.—This is an action of claim and delivery of certain hogs of the value of $995. The plaintiff claims to be the owner and entitled to the possession of the property and that the defendant wrongfully and unlawfully seized and took possession of the same. The defendant in his answer admits the taking of the hogs, and that plaintiff was the owner of the property at the time of the taking, but denies that the seizure was unlawful, and alleges that he is in possession and entitled to possession by virtue of a homestead entry to certain lands in Cassia county, Idaho, and that said hogs were trespassers thereon, and were taken up by defendant pursuant to the provisions of chap. 12, art. 1 of the Rev. Codes of Idaho. The defendant also alleges that the title of said property has been vested in the defendant under chap. 12, art. 1, and that notices were given as required by sec. 1280, Rev. Codes.

The cause was tried with a jury and a verdict was rendered in favor of the defendant, that the defendant was entitled to the ownership and possession of the hogs or the value thereof, $995, together with costs. Judgment was rendered accordingly, and this appeal is from the judgment.

The first and main question urged for reversal by appellant is based upon the order of the trial court in overruling a motion for an instructed verdict for the plaintiff. The grounds of the motion in substance are: First, that the land upon which the defendant claims the hogs trespassed had been with-

drawn from settlement and occupancy prior to the 9th day of September, 1909, and was not subject to settlement or occupancy at any subsequent date, and that the acts of the registrar and receiver of the Hailey land office in accepting the defendant's homestead entry were contrary to law and void; second, that the record does not show any actual damages were sustained by the defendant by reason of the trespass of the hogs, nor any presentation by the defendant to plaintiff of any proper claim for charges in accordance with sec. 1280, Rev. Codes; third, that the claim of ownership of the hogs, through forfeiture by plaintiff by reason of its failure or refusal to pay the sum demanded for damages, irrespective of whether the same was reasonable, just or proper, is the taking of plaintiff's property without due process of law, and that if secs. 1279, 1280, 1281 and 1282 of the Rev. Codes are to be construed as authorizing such taking of the property of another, said sections are unconstitutional, and in violation of sec. 13, art. 1 of the constitution of the state.

This motion presents the question whether the defendant at the time he seized the hogs on October 4, 1911, October 15, 1911, and October 24, 1911, had such ownership or occupancy of the lands where the hogs were taken as to give the defendant the relief provided for by chap. 12, art. 1, of the Rev. Codes.

Sec. 1278 of said chapter provides: "The owner or occupant of premises is not required to fence against hogs." Sec. 1279 provides: "If any hog is found trespassing, the occupant or proprietor of the premises may take up and safely keep, at the expense of the owner thereof, such hog, and hold the same until the payment of the expense and damages by the owner, and shall be allowed fifty cents per head additional for each animal so taken up." Sec. 1280 provides for notices to be given by the person taking up such animal, and sec. 1281 provides that if the owner and taker-up of such hog cannot agree to the amount of damage, they must select a disinterested person, who must hear the facts from both parties and fix the amount of damages to be paid, and that such damages are a lien upon the hog and other personal property; and then fol-

lows the time of payment, the amount of damages to be paid, and such amount is declared a lien; and if the same is not paid, the taker-up shall notify the constable, and levies shall be made and the property sold to pay the fees and the keeping charges and the damages. Sec. 1282 provides also that if the owner does not appear and substantiate his title and pay the charges within thirty days after the notice, the absolute ownership of the hogs shall be vested in the person taking up the hogs, provided he shall keep a copy of the notices posted, which shall be indorsed with the date and manner of posting and the places where posted, and such notices shall have the same force and effect as a bill of sale of such hogs.

Under the provisions of the foregoing sections, the defendant's rights and claim of ownership or right of possession of the hogs seized and sold depend entirely upon the question whether the defendant has shown facts to justify the verdict. That is, was the defendant's ownership or occupancy of the land where the hogs were trespassing established and proven in this case, and did the defendant comply with the statute in making the seizure and the sale of said property?

Thomas E. Walton made homestead filing, serial number 06825, September 7, 1909, for the south half of the northeast quarter, the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter of section 15, township 9 south of range 29 E., B. M., and established his residence thereon on the 15th day of September, 1909, and has resided there with his family ever since said date up to the trial, farming and cultivating the same. The record also shows that the hogs were trespassing upon the land above described, eating and destroying crops planted and cultivated by the defendant, and on October 4, 1911, he shut up three head; on October 15, 1911, thirty-six head, and on October 20, 1911, forty-six head; and on each of the foregoing dates posted notices of the taking up of such hogs. After these notices were posted an attempt was made to arbitrate the damages, but no arbitration was effected.

It appears that the defendant's entry allowed by the registrar and receiver of the local land office was in part with-

drawn from entry, under the reclamation of June 17, 1902, on January 27, 1904, and the remainder was withdrawn on September 17, 1909, and by reason of such withdrawal the commissioner of the general land office held the defendant's entry for cancelation December 27, 1909, and the defendant was so notified. The defendant appealed to the Secretary of the Interior and the action of the commissioner in canceling such entry was affirmed on September 7, 1910. A motion was made for a review, which was denied on the 30th of March, 1911, and on July 5, 1911, the commissioner canceled the entry.

.A mineral protest was also filed against such entry by R. B. Greenwood, but was not considered by the commissioner of the general land office further than that the department held the cancelation of the defendant's homestead entry rendered action on the protest unnecessary. After the Secretary of the Interior had affirmed the action of the commissioner the defendant applied to the department for further relief, and the reclamation service made an investigation and had certain surveys made, and on the 28th of December, 1911, the assistant secretary of the interior finally decided and held, after reciting the facts as to the defendant's homestead entry above stated, and the mining location of R. B. Greenwood, that Greenwood's protest against the defendant's entry was unfounded and was without merit and did not warrant rejection of the defendant's homestead claim, and ordered a dismissal of the same, and further ordered that "the reclamation service will then recommend the annulment of so much of the withdrawal order as affects the portion of Walton's claim above the contour of the line so marked upon the ground. . . . . This will enable Walton to secure title to the part so freed from the withdrawal order by application for reinstatement of his entry, accompanied by his own affidavit showing that he has not alienated, conveyed, or contracted to convey any portion of the lands involved, and that he has not since the date of cancelation of his said entry made any other homestead entry or become otherwise disqualified to take lands under the homestead law." This order and decision of the assistant secretary of the interior is dated December 28, 1911, and clearly recog-

nizes the existence at that time of the homestead entry of the defendant.

The foregoing is the record title claimed by the respondent to the lands included within the homestead entry. The appellant's title is a mining location and a lease from the locator for the same land from Greenwood, who had made the mineral location.

It appears from the evidence that after the defendant made his homestead entry he immediately went into the possession of the same and built a house and made improvements upon said homestead and remained in possession and control of said homestead thereafter up to the time of the trial. The evidence also shows that at the time the hogs went upon said homestead the .defendant had about thirty acres of wheat and that the said wheat had been stacked and this was eaten by the hogs; that in figuring the damages he sustained he estimated the rate per bushel at sixty cents; that he had cultivated and produced 150 sacks of potatoes in the garden. The defendant also testified that he had 148 bushels of grain, which he fed to the hogs after he had them taken up, and that such grain was worth $1.16 a hundred; that the damages as a whole were estimated at $663.

There is evidence also in the case that the plaintiff was in possession at different times of portions of the homestead, and that sheep were grazed thereon.

Upon these issues the court fully instructed the jury upon the law and they found for the defendant.

Sec. 5983, Rev. Codes, which was incorporated in the Rev. Stats. in 1887 and incorporated in the Rev. Codes in the 1908 edition, was in force and effect at the time the defendant's homestead entry was made and continued in force at the time of the trial; it reads as follows:

"A certificate of purchase, or of location, of any lands in this state, issued or made in pursuance of any law of the United States, is primary evidence that the holder or assignee of such certificate is the owner of the land described therein; but this evidence may be overcome by proof that, at the time of the location, or time of filing a pre-emption claim on which

the certificate may have been issued, the land was in the adverse possession of the adverse party, or those under whom he claims, or that the adverse party is holding the land for mining purposes."

This court construed the foregoing statute in the case of *Johnson v. Oregon Short Line R. Co.*, 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744, and said: "The laws of this state recognize such entry [that is, homestead entry] as private property, and make the certificate of entry primary evidence that the holder thereof is the. owner of the land therein described.    (See Rev. Stats., sec. 5983.)    The words 'private property' in sec. 2679 of the Rev. Statutes, quoted above, have no reference to the title as between the private owner and the government of the United States, but relate solely to the railroad corporation.and the private owner.    As between the railroad company and the homestead entryman, the latter, after entry, is the owner, and the homestead entry is private property."

Applying this rule to the facts in this case, it is apparent that the respondent, having made his homestead entry, and the land office having issued to such entryman a certificate, and the government having recognized the validity of such entry in the decision rendered on December 28, 1911, this court will be governed by the decision, and will not discuss or decide what title or right the defendant has or will secure from the government, neither will we consider or determine what right or title was obtained by Greenwood, a locator of a mining claim upon said land.    We shall be.governed entirely by the laws of this state, which recognize the certificate of location .issued and made in pursuance of the laws of the United States, as *prima facie* evidence that the holder of such certificate has an inchoate right and title to the land described therein, in the absence of proof that the land at the time of location was in the adverse possession of an adverse party, or a person under whom he claims, or that the adverse party is holding the land for mining purposes.

It is apparent that the title and the right of possession of both the plaintiff and the defendant depend upon a right and title acquired by each upon application under the laws of the

United States and that the government has not asserted any right to said lands in the present controversy. Under such a state of facts, as between the parties to the suit, we are satisfied that the defendant has the right to protect his possession and occupancy of the land, and had a right to seize and take up under the laws of the state, hogs grazing and trespassing upon the same, and that the court did not err in his instructions to the jury upon that question, and the jury did not err in their verdict in finding that there was a trespass upon the occupancy and ownership of the defendant by the hogs owned by the plaintiff.

It is also argued in this case that the finding of the jury and the judgment are void as to what, if any, actual damages were sustained by the defendant by reason of said alleged trespass. There is nothing in this contention. There was evidence as to the damage and the jury found the amount, and the evidence tends to prove actual damages as found by the jury.

It is also argued that the verdict and judgment are void because the defendant did not present to the plaintiff any proper claim for charges in accordance with sec. 1280 of the Rev. Codes, from which the jury could find a refusal of the plaintiff to pay the same as by said section required. This section provides: "Any person taking up a hog under this article, must immediately thereafter write out three notices in a plain, legible hand, giving correct description thereof, with the marks and brands, if any, on said hog, and the time and place of taking up, and at once post up said notices in a good and substantial manner in three conspicuous places in the precinct in which said hog was taken up."

The evidence shows that the defendant gave the notices as required by the statute, describing the marks and brands on the hogs and the time and place of taking up, and posted such notices in proper manner, and that the plaintiff had full knowledge of the same, and this is evidenced further by the statements made by an employee of plaintiff, who testifies that negotiations were had with the defendant about settling such damages.

It is also argued that secs. 1279, 1280, 1281 and 1282, being the various sections heretofore referred to in this opinion, are unconstitutional, and provide for the taking of property without due process of law.

Under the provisions of sec. 1279, where a hog is found trespassing, the occupant or proprietor may take the animal up at the expense of the owner of such hog, and hold the same until the payment of the expense and damages by the owner, and he shall be allowed fifty cents per head additional for each animal so taken up. This section of the statute creates a lien upon the animal taken up for the keep and expense of the animal trespassing; and sec. 1281 provides that if the owner and taker-up cannot agree, that a disinterested person must, after hearing all the facts, fix the amount of damages, and the same are a lien upon said hog; and if said amount is not paid within five days, together with costs of keeping said hog, the taker thereof notifies the constable who levies upon the hog and the same is sold, after giving notice; and if the owner does not appear and substantiate his title and pay the charges within thirty days after the notice has been given, then under the provisions of sec. 1282 the ownership shall be vested in the person taking up the hog.

This chapter, of which these different sections are a part, was enacted for the purpose of creating a lien upon hogs committing trespass, and the lien thus created may be enforced and satisfied to the extent of the damages, as provided in sec. 1281. In the present case there was no arbitration. The plaintiff refused to arbitrate upon the ground that there was no liability, and refused to pay the expenses or the fifty cents per head allowed by the statute, and in such a case sec. 1282 provides that if the owner or person entitled to the possession of such hogs does not appear and substantiate his title thereto and pay the charges thereon within thirty days after notice has been given as provided, absolute ownership of such hogs shall be vested in the person taking up the same. The charges referred to are the charges specified in sec. 1279 and are as follows: If a hog is found trespassing, it may be taken up and safely kept until the payment of the expense and damages

by the owner, and the taker-up shall be allowed fifty cents per head additional for each animal so taken up. These expenses and damages, thus specified, were not paid in this case, although the defendant demanded a specific sum of $663, neither did the plaintiff tender any sum whatever for the damages, or for the taking up of said property, or the expense of keeping the same, and at the time demand was made for the possession of said hogs by plaintiff no offer was made to pay any damages or expenses whatever. Under the provisions of sec. 1279 the statute gave him a lien upon said property for such expenses and damages, and the plaintiff had no right to maintain an action for claim and delivery without satisfying such claim by proper arbitration or by agreement as provided in sec. 1281. The refusal after full notice to arbitrate, and the refusal to agree upon the damage and expenses, and the failure to appear and substantiate the title of plaintiff, vested the title of said property in the person taking up said property.

The supreme court of California has had under consideration in two different cases certain legislative acts with reference to trespassing animals upon private lands and the constitutionality of the same. While the statutes enacted in California and considered in the cases hereafter cited are not in all respects the same as the statute now being considered, yet we think the principles announced in those cases clearly apply to the questions involved in the present case. We refer to *Rood v. McCargar*, 49 Cal. 117, and *Wigmore v. Buell*, 122 Cal. 144, 54 Pac. 600. In the latter case the court said:

"The obvious purpose of the act is to afford the owner of land trespassed upon a speedy and somewhat summary remedy by giving an action both against the owner if known and against the animals if he is not known, and the attachment against the property may be given in both cases. . . . . . An act should be given a construction, if it can be done within the rules of law, to carry out its obvious purpose. The right to distrain is an option given to the land owner which he may exercise for two days without instituting any legal proceedings whatever, the declared purpose being to enable the land owner

during that period to ascertain the owner of the animals and to determine which remedy given by the act the land owner will resort to.'' The court also in that case refers to the contention of the appellant, and says: ''Appellant's contention would compel the land owner, where the owner of the animal is known as well as where not, to personally hold in his possession the trespassing animals under the distraint or lose his lien, which we do not think comports with the purpose or language of the act.''

So, in the present case, under the provisions of sec. 1279, the owner or proprietor of land where a hog is found trespassing may take the animal up at the expense of the owner and hold the same until the payment of the expense and damages by the owner, and he shall be allowed certain amounts, and is given a lien upon the animal taken up and the expense of the animal trespassing. The respondent in this case took possession of the hogs in question under this statute, and there can be no question under the authorities but that such section is constitutional and clearly within the power of legislative enactment.

Sec. 1281, which is a part of the same chapter, which provides for arbitration and assessment of damages, was not and could not be complied with in this case, because the appellant refused to arbitrate, and the remedy left to respondent was that provided in sec. 1282.

In vol. 2, p. 360, Am. & Eng. Ency. of Law, the author lays down the rule of law which seems to have been followed by this court in the case of *Sifers v. Johnson,* 7 Ida. 798, 97 Am. St. 271, 65 Pac. 709, 54 L. R. A. 785, and says: ''Statutes which provide for the seizure of animals *damage feasant,* and their sale if not redeemed within the proper time, are generally considered as a police regulation and properly within the scope of governmental powers, and not in violation of the constitutional provision that no person shall be deprived of life, liberty, or property, but by due process of law.

''(c) Where statutes provide for the taking of trespassing animals *damage feasant,* all proceedings must be strictly in

conformity thereto, or the distrainor will be liable as a trespasser *ab initio.*"

In vol. 10, Am. & Eng. Ency. of Law, p. 299, the author, in discussing what notice is guaranteed, said: "Due process of law does not necessarily require that a person whose property is sought to be affected should have personal notice of the proceeding. The notice may be either actual or constructive, and it is sufficient if a notice is provided by which it is reasonably probable that the person to be affected will be apprised of the proceedings against him.

"6. Due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen had an opportunity to be heard and to defend, protect, and enforce his rights, by establishing any fact which, under the law, would be a protection to him or to his property. It has been said that it matters not that it may be difficult for him to defend under the law, so long as it is not impracticable for him to do so by the use of such reasonable efforts as the owners of property may generally be supposed to be capable of. His opportunity to defend, however, must not be merely colorable and illusory."

We think under the authorities that the seizure of the respondent was lawful; that the statute gave him the lien upon the property seized; that the appellant had notice of such seizure; that the appellant had in no way paid, or offered to pay, any damages; neither did the company offer to settle or pay the charges or expenses of keeping the animals seized by the respondent, nor appear and substantiate its title under the provisions of sec. 1282, Rev. Codes.

This court, in the case of *Sifers v. Johnson,* 7 Ida. 798, 97 Am. St. 271, 65 Pac. 109, 54 L. R. A. 785, had under consideration the recovery of damages by trespass of sheep upon the premises and within two miles of the same, and in discussing the right of recovery in that case the court referred to the different sections of chapter 12 of the Rev. Codes (secs. 1340–1344, Rev. Stats.), which are involved in the present case, and said: "These statutes, like those in question here, were enacted to protect the farmer from annoyance and injury caused by

the trespassing of hogs, and to save them expense in fencing against hogs. . . . . It is evident that in passing the statutes cited, relative to the running at large of hogs and the herding and grazing of sheep within two miles of dwelling-houses, the legislature intended to further the public good and preserve the peace, by preventing those conflicts which would naturally result from the herding of sheep about the dwellings of settlers. The statutes were intended to promote the public good and avoid danger and injury to the citizens . . . . and as those questions are of legislative discretion and not judicial, we are not authorized to hold the statutes unconstitutional.''

Under the facts in this case there were no damages fixed by arbitration, and the respondent, the taker-up of the property, was not required to notify the constable to make levy and sale as provided by sec. 1281. The respondent was forced to rely upon his lien conferred by sec. 1279 and the title conferred upon him by the provisions of sec. 1282 as a defense to the plaintiff's claim to the possession of said hogs, and we think that the jury were justified in finding for the defendant on the right of possession.

We are inclined to think that chapter 12 is a plain and speedy method of promoting the public good and of protecting lands where hogs and other animals are permitted to run at large in violation of law, and is clearly within the power of legislative enactment, and that it is sufficient in its provisions and gives sufficient notice to pass title to the taker-up upon compliance therewith, and is not in violation of the provisions of sec. 13, art. 1 of the constitution of the United States.

Counsel for appellant assign as error the giving of a certain instruction embracing the part of sec. 1281 which relates to arbitration. Referring to the instruction given, we find that the court told the jury ''that when one who takes up stock as trespassers or strays, that notices shall be posted up in at least three conspicuous places in the precinct wherein the alleged trespassing was committed, and that if no one claims the trespassing animals or pays for the damage actually sustained by the party taking them up, that they become his property.'' That instruction is in accordance with sec. 1282,

and as a part of said instruction the court also said: "It seems in this case, gentlemen of the jury, that efforts were made by both plaintiff and defendant to settle or arbitrate their differences as to the alleged trespass of the animals, and that it is your duty to determine from the evidence who is to blame, if anyone, that no settlement was made." This latter part of the instruction is in accordance with the evidence that while parties to the action had conversations and talked about arbitration, they never did agree, and never had any arbitration, and the court recognized that condition. The damages not being paid for, therefore sec. 1282 applied as the law to the facts in the case, and this instruction was correct.

While counsel for appellant devotes some attention in his argument to the fact that the evidence does not sustain the verdict of the jury as to the amount of damages, we are unable to find any specific error assigned covering this question; neither is there any instruction in the record excepted to wherein the court instructed the jury upon this question. For this reason we will not consider this question.

We have carefully gone over the record in this case and find no error which warrants a reversal of the judgment. The judgment is *affirmed.* Costs awarded to respondent.

Sullivan, J., concurs.

AILSHIE, C. J., Dissenting—I think the majority opinion is somewhat misleading both as to the law and the facts. In this case the trial court held that the defendant, who was the taker-up of the animals, had acquired absolute title to the property under the statute. It should also be remembered that he makes no pretense of having acquired that title under the provisions of sec. 1281. Sec. 1281 provides for the appointment of appraisers or arbitrators to fix the amount of the damage sustained by reason of the trespass, and it prescribes the procedure to be pursued for the collection of the amount thus assessed in the event the owner of the animals does not pay. Notice is given to the constable by the taker-up of the animals, and the constable thereupon levies upon the property

and sells it at public sale in a manner very similar to that of sale on execution. But no pretense is made in this case that the respondent acquired title to these hogs through the procedure prescribed by sec. 1281. On the contrary, any title he acquired was acquired under the provisions of secs. 1279, 1280 and 1282, and those sections alone. Secs. 1279, 1280 and 1282 read as follows:

Sec. 1279: "If any hog is found trespassing, the occupant or proprietor of the premises may take up and safely keep, at the expense of the owner thereof, such hog, and hold the same until the payment of the expense and damages by the owner, and shall be allowed fifty cents per head additional for each animal so taken up."

Sec. 1280: "Any person taking up a hog under this article, must immediately thereafter write out three notices in a plain, legible hand, giving a correct description thereof with the marks and brands, if any, on said hog, and the time and place of taking up, and at once post up said notices in a good and substantial manner in three conspicuous places in the precinct in which said hog was taken up."

Sec. 1282: "If the owner or person entitled to the possession of such hog does not appear and substantiate his title thereto and pay the charges thereon within thirty days after the notice has been given, as above provided, the absolute ownership of such hog shall be vested in the person taking up such hog. Provided, he shall keep a copy of the notices posted, as prescribed by this article, which shall have indorsed thereon the date and manner of posting and the places where posted, which shall have the same force and effect as a bill of sale of such hog."

Under the provisions of sec. 1280, the taker-up of the animals confiscated in this case posted the following notices in three public places:

"NOTICE OF STRAY HOGS.

"October 4, 1911.

"I have in my possession three (3) hogs, color black and white, no marks or brands visible.

"Owner please call within 30 days from date and pay damages and take hogs.                                T. E. WALTON."

"County of Cassia,
   State of Idaho.

"Oct. 15, 1911.

"To whom it may concern—NOTICE.

"Notice is hereby given that I, Thos. Walton, of Cassia County, Idaho, have this day taken up 36 hogs, described as follows: All black with white markings, ranging in size from sucking pigs, to full grown hogs, there are as far as I can discern, no brands or marks on the said hogs. The said hogs were taken up for trespass on the place occupied by me, known as the Tom Walton place, and for damage done to garden and stacked grain on the said place.

"The said hogs were taken up on the 15th day of October, about 4 o'clock P. M. and the owners or owner is hereby notified that I hold the said hogs for damages they have done, as in the statutes of Idaho for such cases, made and provided.
                                                "T. E. WALTON."

"County of Cassia,
   State of Idaho.

"Oct. 20, 1911.

"To whom it may concern—NOTICE.

"Notice is hereby given that I, Thos. Walton, of Cassia County, Idaho, have this day taken up 46 hogs, described as follows: All black with white markings, ranging in size from sucking pigs to full grown hogs, there are, as far as I can discern, no brands or marks on said hogs. The said hogs were taken up for trespass on the place occupied by me, known as the Tom Walton place, and for damage done to garden and stacked grain on the said place.

"The said hogs were taken up on the 20th day of October, about 10 o'clock A. M., and the owners or owner is hereby notified that I hold the said hogs for damages they have done as in the statutes of Idaho for such cases, made and provided.                                T. E. WALTON."

The act from which section 1282 is taken was first adopted by the territorial legislature January 22, 1881 (1881 Sess. Laws, p. 434). Whoever drew that act, however, was evidently familiar with the provisions of the fourteenth amendment to the federal constitution and had some appreciation of its purpose and significance, and so he did not provide that the taker-up of a trespassing hog might write his own bill of sale for the hog and keep it. He evidently believed that a property right even in a trespassing hog was entitled to some semblance of protection. He provided that after a ten days' notice the animal should be sold by the sheriff or constable of the county at public auction, and that from the proceeds of the sale he should pay the fees and expense of the sale and the charges due to the taker-up of the animal and turn the balance over to the county treasurer. It was further provided that the lawful owner of the animal might at any time within six months thereafter file his claim with the county commissioners for the proceeds paid in to the treasurer and that the same should thereupon be returned.

The distinguishing feature, however, between sec. 4 of that act and sec. 1282 here under consideration is that the act of 1881 provided for a public sale by an officer of the law, and that public notice of such sale shall be given by such officer. The act of January 22, 1881, was amended by act of February 7, 1889, and was thereby reduced to the present arbitrary, confiscatory and unconstitutional condition in which sec. 1282, Rev. Codes, is now found, providing for the unceremonious forfeiture of a man's title to property simply because it happens to stray upon another man's possession, and that man sees fit to post a notice prepared by himself at such place as he may select and at the expiration of thirty days write himself a bill of sale. The man who drew the amendment of February 7, 1889, made swine an exception in the laws of Idaho from all other kinds of trespassing animals. So now, when that cloven-footed quadruped of ancient notoriety goes foraging beyond the protecting care of the swineherd, he at once loses his character as a domestic animal and becomes an animal *ferae naturae,* subject to capture by anyone on whose

possession he may at any indiscreet moment find himself. Of course, the hog doesn't care much about his character,—he would ordinarily just as soon be treated as a wild animal as to be treated as if he had been domesticated for centuries. His fate is generally about the same either way, but it makes a difference with his owner, and while the hog may not see the "notices posted in three public places in the precinct," and may not know or care whether he has been dealt with by "due process of law," still his owner and master grieves to part with him in such an informal and primitive manner. Secs. 1291 to 1301, inclusive, Rev. Codes, deal with estrays and trespassing animals generally, but those statutes provide for notice and sale by an officer and a return of such sale, but the despised hog is made an exception to this statute, and he is not accorded either a private or public sale. He is just confiscated as contraband of war.

No objection is urged against the validity of the provisions of secs. 1279 and 1280. These sections clearly authorize the occupant of the premises to take up and safely keep any trespassing hogs and give the taker-up a lien upon such animals for his damages and costs. Sec. 1280 provides a notice to be given of the taking up of such animals, and sec. 1281 provides a method of appraisement or arbitration and the procedure for the collection of the amount found due. This statute only provides for the appointment of two appraisers, one to be appointed by the owner and the other by the taker-up of the animal. That procedure was pursued in this case, but the thing happened with these arbitrators that might be expected to happen with only two men comprising such a board or body,—they disagreed. After hearing the evidence, the arbitrators executed and delivered to the parties a statement, of which the following is a copy:

"Bonanza Bar, Nov. 9, 1911.

"At a meeting for the purpose of arbitrating the question of damages claimed by T. E. Walton on hogs taken up by him, we the arbitrators are unable to fix the amount of damages.  "Signed—FRED SCHIENE,

"WM. CAMPBELL."

This left the parties where they started in the matter of arbitration, and the taker-up of the stock now relies for title on the provisions of sec. 1282. The latter section, which is really the objectionable section, purports to afford an alternative remedy which the taker-up may pursue in the event no appraisement or arbitration is had. This section undertakes without ceremony to vest the absolute and unqualified ownership of the property in the person taking up the same, provided no appraisement or arbitration has been had and the owner of the animals fails to pay the charges thereon within thirty days after the notice has been given, as provided by sec. 1280. It further provides that he may write his own bill of sale to the property by simply indorsing on a copy of the notice "the date and manner of posting and the places where posted." This statute authorizes a man who takes up another man's property to post his notice for thirty days and thereafter write a bill of sale in favor of himself, vesting title in himself to some other man's property. It is really difficult for me to understand why this section does not amount to taking a man's property without due process of law and in violation of sec. 12, art. 1 of the state constitution, and also in violation of the fourteenth amendment to the federal constitution. This statute, sec. 1282, makes no pretense at giving the owner of the property a hearing, nor does it prescribe any procedure of a judicial or *quasi*-judicial nature whatever for the sale of the property or the vesting of title in the taker-up of the property. The taker-up is allowed to assess his own damages and the owner of the trespassing animal has no remedy or method of hearing unless he gets notice in time to arbitrate. No sale is provided for, no method is prescribed for fixing the amount of damages, no hearing is given and no procedure whatever is had except that the taker-up of the property writes out three notices, each as above indicated, and posts them in three places within the precinct, and he has the selection of the places himself, and finally writes his own bill of sale to another man's property.

The serious objection to these statutes is not directed against sections 1279, 1280, and 1281, as taking property without due process of law, but the fatal objection is directed against sec. 1282. That is the section that divests a man of his property without due or any process of law, and in my judgment is violative of both sec. 13, art. 1 of the state constitution and of the fourteenth amendment to the federal constitution.

I have been unable to find any decision which deals with a statute such as ours that arbitrarily vests the title to a trespassing animal in the captor without any notice and sale or judicial proceeding of any kind. I take it that no other statute has ever attempted to authorize such a thing. The authorities, however, are abundant that deal with the constitutionality of legislative acts relating to trespassing animals and which attempt to provide some procedure for the sale of the property and the payment of damage and costs.

One of the oldest, best considered and most extensively cited cases on the subject in this country is *Rockwell v. Nearing*, 35 N. Y. 302. In that case a trespassing cow had been seized and sold under a trespass statute of New York adopted in 1862. The statute, among other things, authorized any person to take into his custody "any animal which may be trespassing upon his lands." The captor of the animal was required to immediately give notice to some justice of the peace or commissioner of highways, who was in turn required to post notices that the animal would be sold at public sale. The officer was thereupon required to sell the animal, retaining a dollar for his fees and paying half a dollar to the captor for taking up the animal together with a "reasonable compensation for keeping the animal." The surplus was required to be paid to the owner of the animal. The supreme court of New York held that this statute did not afford due process of law, and for that reason was in conflict with the constitution. The opinion reviews the authorities at great length and treats this subject in a very interesting way. Among other things, the court says:

"In view of the foregoing exposition by the courts of the design and effect of the constitutional restriction, the legis-

lature has no authority either to deprive the citizen of his property for other than public purposes, or to authorize its seizure, without process or warrant, by persons other than the owner, for the mere punishment of a private trespass. So far as the act in question relates to animals trespassing on the premises of the captor, the proceedings it authorizes have not even the mocking semblance of due process of law. The seizure may be privately made; the party making it is permitted to conceal the property on his own premises; he is protected, though the trespass was due to his own connivance or neglect; he is permitted to take what does not belong to him without notice to the owner, though that owner is near and known; he is allowed to sell, through the intervention of an officer, and without even the form of judicial proceedings, an animal in which he has no interest, by way either of title, mortgage, pledge or lien; and all to the end that he may receive compensation for detaining it without the consent of the owner, and a fee of fifty cents for his services as an informer. He levies without process, condemns without proof, and sells without execution.''

One of the late cases on the subject is that of *Greer v. Downey,* decided in 1903 by the supreme court of Arizona and reported in 8 Ariz. 164, 71 Pac. 900, 61 L. R. A. 408. This case cites and approves *Rockwell v. Nearing, supra.* The legislature of Arizona provided that the constable of each precinct should be the poundmaster of that precinct, and that anyone might take up a trespassing animal and deliver it to the poundmaster, who might thereupon post notices containing a description of the animals and the amount of damages claimed and at the time fixed for the sale might sell the property, retaining his fees and paying the damage and expenses over to the captor of the trespassing animal, and that any proceeds remaining in his hands should be paid to the county treasurer and that the same might be claimed by the owner of the animal within six months.

The supreme court of Arizona cites a large number of authorities on this question and holds the act violative of the constitution of the United States, in that it deprives the owner

of his property without due process of law.  The court concludes its consideration of the question as follows:

"The objectionable feature of the act is that, independent of any proceeding contemplated by section 3, the poundkeeper is authorized by subsequent sections of the act, without any judicial proceedings for the purpose of ascertaining either the amount of the damages or whether the animal was in fact running at large within the meaning of the act, to sell to satisfy the private claim of the land owner for damages for the trespass.

"We have no doubt that the portion of the act which authorizes a seizure and sale and a payment of damages claimed for the trespass without judicial process or proceedings other than as provided for in the act is a deprivation of property without due process of law, and as such is repugnant to the constitution."

Between the rendition of the decision of the supreme court of New York in *Rockwell v. Nearing,* in 1866, and that of the supreme court of Arizona in *Greer v. Downey* in 1903, a great many various decisions have been announced in the several states on similar and kindred statutes.  Among this multitude of authority, not a single, solitary decision can be found upholding such a statute as sec. 1282 of our Rev. Codes.  In this list of authorities, and announcing views as to the unconstitutionality of such statutes much stronger and more pronounced than above expressed, are to be found *Varden v. Mount,* 78 Ky. 86, 39 Am. Rep. 208; *Poppen v. Holmes,* 44 Ill. 362, 92 Am. Dec. 186; *Armstrong v. Traylor,* 87 Tex. 598, 30 S. W. 440; *East Kingston v. Towle,* 48 N. H. 57, 97 Am. Dec. 575, 2 Am. Rep. 175; *St. Louis I. M. & S. R. Co. v. Wynne,* 224 U. S. 354, 32 Sup. Ct. 493, 56 L. ed. 799, 42 L. R. A., N. S., 102.

Some reliance seems to be placed on *Rood v. McCargar,* 49 Cal. 117, and *Wigmore v. Buell,* 122 Cal. 144, 54 Pac. 600, and other authorities, along the same line and to the same effect.  I take it no fault may be found with the rule of law announced by these authorities.  The whole difficulty lies in this: that neither the facts nor the law considered in either

of the California cases even approach a parallel with this case. In *Rood v. McCargar,* the statute was practically the same as our statute was when first enacted in 1881. It provided for a sale by the constable of the precinct at public auction after five days' notice, and that the amount of damages should be assessed either by arbitrators appointed by the owner and taker-up of the animals, or, in case of their failure to do so, then by three disinterested persons to be appointed by the constable. It will therefore be seen at once that the statute discussed in *Rood v. McCargar* provided for assessing the damages by a disinterested tribunal, for notice and sale by a public officer, and all the procedure and safeguards usually understood as going to constitute due process of law.

In *Wigmore v. Buell,* the court was considering an act of March 7, 1878 (Stats. of 1878, p. 176). An examination of that act will disclose at once that it provided judicial procedure for assessing the damages and penalties and for attaching and levying upon the property and its sale to compensate the taker-up for such damage and costs. The court held that when these things were done the owner of the property had been accorded his day in court, and that his property had been taken by due process of law. The failure of our statute to provide a like or similar remedy is the very objection I find to it, and is the very reason which to my mind renders it obnoxious to both the state and the federal constitution.

For the foregoing reasons, I dissent from the opinion of my associates.

## ON REHEARING.

(November 20, 1913.)

SULLIVAN, J.—A rehearing of this case was granted, and after a reargument it is clear to the writer of this opinion that the defendant Walton had a lien on the hogs involved, for the damages done by them and for caring for them for a period of thirty days or more, leaving out of consideration any title to them acquired under the provisions of sec. 1282, Rev. Codes. It is also clear that the appellant had full notice of the defendant's possession of said hogs and of the damage they had done him. The respondent tried to settle the matter with appellant, and negotiations extending over several days were carried on and arbitrators were finally appointed under the provisions of sec. 1281, Rev. Codes. It was afterward ascertained that said arbitrators were not residents of the precinct in which said hogs were taken up and other arbitrators were appointed in their place, and the two appointed could not agree. The position taken by the manager of the Fall Creek Sheep Company in said arbitration was that the Fall Creek company owned the land on which said trespass was committed and that they would not pay anything whatever for the damages done, and that ended the efforts of the second attempt at arbitration.

Three trespassing hogs were taken up by the defendant on October 4, 1911. The ranch of the Fall Creek Sheep Company adjoined or was near the ranch of defendant. The appellant corporation had notice of the taking up of said three hogs, and instead of going and getting them, they turned loose thirty-six more hogs to trespass on the defendant, on or about October 15, 1911. And again on October 20, 1911, they turned loose on the defendant forty-six more hogs. They did this on the claim that the appellant was the owner or had the right to the possession of the land claimed by the defendant as a homestead.

The record discloses the following facts: That the appellant turned loose a large number of hogs upon the farm of the respondent, knowing that they would eat up his grain and destroy his crops; that the appellant received actual notice that said hogs were doing damage to the defendant; that the defendant offered at one time to return the hogs without compensation if the appellant would only agree to restrain them until his crops were harvested; that the appellant declined to receive the hogs upon those terms, claiming that it had a right to turn its hogs loose on said land. The appellant refused to arbitrate the matter, denying that there was any trespass or damage done to respondent. Appellant refused to pay any damages on the ground that it had the right to turn its hogs on to respondent's premises.

From all the facts of the case, it is clear that after defendant had taken said trespassing hogs up, he had a lien on them for the damages they had done. The hog is an animal of peculiar disposition, tastes and habits. They are not permitted to run at large in this state, and if an owner turns his hogs loose to prey upon his neighbors' property, he is liable in damages therefor.

The question of the amount of damages sustained by respondent was thoroughly gone into on the trial. In order to settle this matter, we have carefully gone over the evidence in regard to the amount of damages sustained by the defendant. After a careful examination of the evidence, we are satisfied that he has sustained damages in the sum of $600. This includes caring for the hogs for the time defendant had them in his possession. The defendant testified on the trial that he had offered to compromise at one time with the appellant for $663, but that a good part of said sum was for the worry the hogs had given him. The evidence further shows that the hogs were taken from him on replevin about two weeks after said offer to compromise.

We have concluded to modify and reduce the judgment to $600, and the cause is remanded, with instructions to the trial court to reduce said judgment to the sum of $600 and to make findings and enter judgment in accordance with the

views herein expressed. Said judgment shall be a lien upon said hogs.

Costs of this appeal are awarded to the respondent.

Stewart, J., concurs.

AILSHIE, C. J.—I am at a loss to know just what conclusion has been reached by the majority of the court in this case, and I apprehend that the trial court will experience similar difficulty. The judgment entered in the district court from which this appeal was prosecuted adjudges and decrees that the defendant, Thos. E. Walton, is the owner of the hogs described in the complaint over which this litigation arose, and that they be delivered to him, and that "in case a delivery cannot be had" he have a personal judgment against the plaintiff for "the sum of $995, the value thereof." The judgment entered by the majority of the court on the original hearing was a straight affirmance of the judgment of the lower court. I dissented from that opinion and stated the reasons of my dissent, and still adhere to what I then said. A rehearing was subsequently granted, and the opinion of the majority of the court on rehearing concludes as follows: "We have concluded to modify and reduce the judgment to $600, and the cause is remanded, with instructions to the trial court to reduce said judgment to the sum of $600 and to make findings and enter judgment in accordance with the views herein expressed. Said judgment shall be a lien upon said hogs." This would indicate that the majority of the court are now of the opinion that Walton, the respondent herein, did not acquire title to the hogs under the provisions of sec. 1282, Rev. Codes, for if they do so conclude, there would be no object in giving him a lien on his own property. On the other hand, they do not appear to reverse the judgment of the lower court which decrees that the respondent is the owner of the property and entitled to the return thereof. The primary question presented to this court by the judgment of the trial court is whether the property in question belongs to the appellant or the respondent, and the incidental question growing out

of the primary one is the value of the property. I adhere to the views expressed by me upon the original hearing of this case.

I am not unmindful of "the peculiar disposition, tastes and habits" of the hog, to which my associates refer, but whatever his tastes and habits may be, they of themselves are not sufficient to deprive the owner of the hog of his right of property therein. I take it that the "due process of law" provision of the fourteenth amendment is sufficient to protect the owner of a hog in his right of property therein, notwithstanding the "peculiar disposition, tastes and habits" of the hog. The man who took these hogs up and whose property was destroyed by them should be remunerated, and if it is to be determined, as I think it should, that these hogs belong to the appellant, then I agree that the respondent should have reasonable compensation for the damages he has sustained.