BURLES, Admr., Respondent, *v.* OREGON SHORT LINE R. R. CO. et al., Appellants.

(No. 3,372.)

(Submitted March 25, 1914.  Decided April 16, 1914.)

[140 Pac. 513.]

*Railroads—Passengers—Refusal to Stop ˙ Train—Exemplary Damages—Evidence—Admissibility—Res Gestae.*

Railroads—Flag Stations—Refusal to Stop Train—Exemplary Damages.
    1.  In an action against a railway company to recover damages for failure to stop its train at a station where it was scheduled to stop when flagged, punitive, in addition to compensatory, damages may be awarded if it is shown that the engineer saw the signal but willfully refused to stop for the purpose of receiving plaintiff as a passenger.

Same—Aggravation of Disease—Element of Damages—Instructions.
    2.  An instruction that the jury might consider as an element of damages the loss of strength and capacity to resist the ravages of the disease from which plaintiff's intestate was suffering at the time she was compelled to remain for ten hours at a flag station where there were not any accommodations, because of the willful refusal of defendant company's locomotive engineer to stop his train though properly flagged, was properly given.

    [As to civil liability for accelerating death of deceased or injured person, see note in Ann. Cas. 1912A, 965.]

Same—Damages—Evidence.
    3.  Evidence that there were not any accommodations at a flag station at which an invalid passenger was compelled to remain for about ten hours owing to the wrongful refusal of defendant company's engineer to stop his train, was admissible as reflecting upon the probability of plaintiff's claim that she underwent suffering in consequence of being forced to wait at such a place.

Same—Evidence—*Res Gestae.*

4.   Evidence that the invalid passenger referred to in paragraph 3 above manifested her suffering by moaning during the tedious wait for the next train, was properly admitted.

Evidence—Preponderance—How Determined.

5.   The preponderance of the evidence does not depend alone on the number of witnesses testifying to a fact; but in determining the question the jury should consider the opportunities of the witnesses for seeing or knowing the things about which they testified, their conduct and demeanor while testifying, their interest or lack of interest in the suit, and the probability or improbability of the truth of their statements in view of all the other evidence, facts and circumstances.

*Appeal from District Court, Beaverhead County; J. B. Poindexter, Judge.*

ACTION by E. L. Burles, as administrator of Goldie May Burles, deceased, against the Oregon Short Line Railroad Company and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appealed. Affirmed.

*Mr. J. L. Wines* and *Mr. T. J. Harrington,* for Appellants, submitted a brief; *Mr. Wines* argued the cause orally.

*Mr. Lyman H. Bennett* and *Mr. J. H. Alvord,* for Respondent, submitted a brief; *Mr. Bennett* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was prosecuted by the administrator of the estate of Goldie May Burles, deceased, to recover damages alleged to have been suffered by her during her lifetime as the proximate result of defendants' refusal to stop train No. 3 at Barrett's Station on June 27, 1910, and carry her to Butte. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appealed.

At the time this cause of action arose, Barrett's was a station on the main line of defendant company's road, and train No. 3, bound for Butte, was scheduled to stop there upon being flagged. On June 27, 1910, that train, in charge of defendant Hughes as engineer, reached Barrett's on time, at 3:42 A. M.

There is not any dispute that this plaintiff and the deceased, his wife, reached the station in time; that the wife was then suffering from some internal hemorrhage, and was on her way to Butte for surgical treatment; that train No. 3 did not stop; that plaintiff and his wife were forced to remain at the section-house at Barrett's for ten hours, until the next train for Butte arrived; that there were no accommodations there; that as a result the wife suffered intensely, her strength and power of resisting the ravages of the disease were greatly lessened, and that she died about the time she reached the hospital in Butte, on the afternoon of the same day. The plaintiff contends in his pleading and evidence that he went upon the track at the station or section-house and when he saw the train approaching, waived his hat until the engineer gave two short blasts of the whistle, the usual signal of recognition of the fact that the flag had been seen, and an indication of an intention to stop, but that in willful disregard of their duty, the defendants did not stop the train, with the consequences enumerated above.

1. The trial court instructed the jury that they might award exemplary as well as compensatory damages if they found that [1] the defendants were guilty of oppression, malice or fraud. Counsel for appellants are mistaken in assuming that section 4325, Revised Codes, limits the recovery, in a case of this character, to actual compensation. That section does not do more than merely declare just what the rule of law applicable in an ordinary negligence action would be in the absence of the statute. (3 Hutchinson on Carriers, 3d ed., sec. 1421; *Thomas v. Southern Ry. Co.*, 122 N. C. 1005, 30 S. E. 342.)

It is true that, "as a general rule, compensation is the relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance" (sec. 6038, Rev. Codes); but "in any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the

defendant.'' (Section 6047.) In this action recovery is not predicated alone upon the negligence of these defendants. The theory of plaintiff's complaint and his evidence is that the engineer saw the signal to stop and gave recognition by appropriate blasts of the locomotive whistle, and then, in willful disregard of the rights of the plaintiff and his wife, refused to stop the train. That punitive damages may be recovered under such circumstances is the rule well-nigh universal. (*Arzaga* v. *Villalba,* 85 Cal. 191, 24 Pac. 656; *Wilson* v. *New Orleans & N. E. R. R. Co.,* 63 Miss. 352; *Fell* v. *Northern Pac. R. Co.* (C. C.), 44 Fed. 248; 1 White's Personal Injuries on Railroads, secs. 176, 177; 3 Hutchinson on Carriers, sec. 1440.)

A case very similar in its facts to this one was presented to the supreme court of North Carolina in *Williams* v. *Carolina & W. R. Co.,* 144 N. C. 498, 12 Ann. Cas. 1000, 12 L. R. A. (n. s.) 191, 57 S. E. 216, and upon the question now under consideration the court said: ''If the plaintiffs went to the usual place for receiving passengers a reasonable time before the arrival of the train, and were able, ready, and willing to pay their fare, they were entitled to be carried to the next station. (*Phillips* v. *Southern R. Co.,* 124 N. C. 123, 45 L. R. A. 163; 32 S. E. 388; *North Chicago St. R. Co.* v. *Williams,* 140 Ill. 275, 29 N. E. 672; 1 Fetter on Carriers of Passengers, sec. 228.) If they gave the requisite signal, it was the duty of the engineer to stop the train so that they might take passage on it. If he did not see the plaintiffs by reason of mere negligence in not keeping a proper lookout ahead of his train, the defendant would be liable only for actual damages resulting from the failure to stop the train; but, if he did see them, and willfully refused to stop for the purpose of receiving them on the train as passengers, the defendant would be liable to punitive damages, in addition to those which are merely compensatory.''

2. Complaint is made of instruction No. 10 in so far as it permitted the jury to consider, as an element of damages, the [2] loss upon the part of Mrs. Burles of her strength and

capacity to resist the disease from which she suffered, so far as that loss was attributable to the wrongful acts of the defendants. While it is true that the defendants were not responsible for Mrs. Burles' sickness, they cannot escape the consequences of their acts upon that score. Section 6068, Revised Codes, provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." If the disease from which Mrs. Burles was suffering was aggravated, or her power of resistance weakened, or her death accelerated by the long and annoying wait at Barrett's and the failure to secure surgical assistance at the earliest possible time, defendants, by whose wrongful acts these consequences were brought about, must respond in damages; and it is wholly immaterial that they did not know at the time of the fact of her illness or the probable, serious consequences to follow from her missing the train. This rule is so universally recognized by the courts and text-writers that a single reference will suffice. (3 Hutchinson on Carriers, sec. 1432, and cases cited.)

3. The trial court did not err in admitting evidence that there were not any accommodations at Barrett's, where Mrs. Burles was compelled to stay for ten hours, or until the arrival [3] of the next train for Butte. If this plaintiff, for instance had been wrongfully put off the train at Barrett's, he could show the surroundings as reflecting upon the extent of the inconvenience he suffered. The same rule is applicable here. Negligence is not predicated upon the failure of the defendants to provide accommodations at Barrett's; but the complaint is made that Mrs. Burles was, by the wrongful acts of the defendants, forced to remain at a place where there were not any accommodations, and evidence of this fact was competent as reflecting upon the probability of plaintiff's story that she suffered in consequence of being compelled to wait at that point and

under the circumstances as they were there presented. (*Williams* v. *Vanderbilt*, 28 N. Y. 217.)

4. Complaint is made that plaintiff was permitted to testify that during the wait at Barrett's his wife manifested her suf-
[4] fering by moaning. The evidence was properly admitted. In Abbott's Mode of Proving Facts, second edition, 345, it is said: "The apparently spontaneous manifestations of present feeling by demeanor, gesture, outcry, moan, tears, and the like, as distinguished from declarations describing feelings, are original evidence."

5. Finally, it is insisted that the evidence is insufficient to justify the verdict. It is not controverted that plaintiff gave a proper signal to stop the train; but it is most earnestly urged upon us that the evidence is overwhelmingly preponderant that the engineer did not see it and could not have seen it under the circumstances of the case as narrated by the plaintiff, and that no answering signal was given. It is true that the engineer, the fireman, and brakeman on the train at the time each testified that the stop signals—two short blasts of the whistle— were not given, and the engineer, fireman, and two other employees of the company expressed opinions that a person in the situation of the plaintiff, dressed as he was, could not be seen for 1,000 feet, and that the engineer could not have distinguished that he was attempting to stop the train for more than "200 or 300 feet" (Hughes); "300 or 400 feet" (Palmer); "200 feet" (Hale); "350 or 400 feet" (Elwin). The plaintiff testified that he was about 1,000 feet from the train when his signals were answered by the engineer. L. K. Adams, a witness for the plaintiff, testified that he had stopped this same train at Barrett's during April and May, by merely waving his hand, when the train was 1,050 feet away, and that his sig-
[5] nal had been seen and answered. The preponderance of the evidence does not depend alone upon the number of witnesses who testify to a fact. The court very properly told the jury that, in determining upon which side was the preponderance of the evidence, they "should take into consideration the oppor-

tunities of the several witnesses for seeing or knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial.''

In view of the many facts and circumstances appearing upon this record which the jury might have considered as supporting plaintiff's story, and which they doubtless did consider in weighing the evidence given by the witnesses for the defendants, we cannot say that a different result should have been reached.

We do not find any reversible error in the record.   The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.