LAHOOD, RESPONDENT, v. CONTINENTAL TELEGRAPH CO. ET AL., APPELLANTS.

(No. 3,642.)

(Submitted March 27, 1916.  Decided April 28, 1916.)

[157 Pac. 639.]

*Telegraphs—Fraudulent Delay in Transmission—Liability— Tort of Agent—Liability of Company—Punitive Damages— Statutes—Action on Contract or in Tort—Waiver—Stipulations on Telegraph Blank—Applicability.*

Telegraphs—Negligence in Transmission—Action on Contract or in Tort.
1.  One sustaining damage through the negligence of a telegraph company in transmitting or delivering a message may sue upon the contract if one exists between him and it, or waive the contract and sue in tort.

[As to recovery for failure of telegraph company to send or deliver message, see note in 10 Am. St. Rep. 778.]

Same—Tort of Agent—Punitive Damages—Liability of Company.
2.  A telegraph company may be made to respond to punitive damages for its agent's misconduct, even though the wrongful act was unauthorized and not ratified by it.

Same—Fraudulent Delay—Punitive Damages—Statutes.
3.  Where the element of fraud entered into the wrongdoing of a telegraph operator in withholding messages to and from a customer of his company, thus enabling him to profit by it, the provisions of section 6047, Revised Codes, awarding the right to punitive damages, governed, and section 5363, which allows the injured person $50 in addition to his actual damages, did not.

Same—Repeating Messages—Applicability of Stipulation.
4.  The provision on a telegraph blank for repeating messages to avoid mistake has no application to a case in which damages are sought for fraudulent delay in transmission.

Same—Claims for Damages—Presentation of—Applicability of Stipulation.

5. The stipulation on a telegraph blank that the company will not be liable for damages or statutory penalties where claim is not presented within sixty days after filing the message for transmission, applies only to claims arising from negligence, and not to one of the character mentioned above.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Shadan Lahood against the Continental Telegraph Company and another. Judgment for plaintiff and defendants appeal from it and from an order denying them a new trial. Affirmed.

*Messrs. Shelton & Furman* and *Mr. A. J. Verheyen,* for Appellants, submitted a brief; *Mr. Fred J. Furman* argued the cause orally.

In the case at bar, the jury's verdict was general, and it is impossible to determine from the verdict whether the entire amount was intended to be compensation for damage actually suffered or whether some portion of the verdict was intended to be punitive damages. That being the case, the situation is exactly that of *Lake Shore & M. S. R. Co.* v. *Prentice,* 147 U. S. 101, 37 L. Ed. 97, 13 Sup. Ct. Rep. 261, which holds that a corporation is not liable to exemplary or punitive damages for acts which it did not authorize and has not ratified. (See, also, *Mendelsohn* v. *Anaheim Lighter Co.,* 40 Cal. 657; *Turner* v. *North Beach & M. R. Co.,* 34 Cal. 594; *Rouse* v. *Metropolitan St. Ry. Co.,* 41 Mo. App. 298.)

The statute fixes the measure of damages and provides the penalty in cases of this kind. (Rev. Codes, secs. 5363, 6048; *Turner* v. *North Beach & M. R. Co.,* 34 Cal. 594.)

The evidence does not justify the verdict. With respect to this contention, appellants respectfully urge: The provisions contained in the stipulations on the telegraph blanks on which these messages were written out respecting the measure of damages which could be claimed, and the time (sixty days) within which

claims must be made, are reasonable.   (*Wheelock* v. *Postal Telegraph-Cable Co.*, 197 Mass. 119, 14 Ann. Cas. 188, 83 N. E. 313; *Forney* v. *Postal Telegraph-Cable Co.*, 152 N. C. 494, 67 S. E. 1011; *Barnes* v. *Postal Telegraph-Cable Co.*, 156 N. C. 150, 72 S. E. 78; *Western Union Tel. Co.* v. *Hollis*, 28 Okl. 613, 115 Pac. 774; *Stone & Co.* v. *Postal Telegraph Co.*, 31 R. I. 174, 29 L. R. A. (n. s.) 795, 76 Atl. 762; *Toale* v. *Western Union Tel. Co.*, 83 S. C. 41, 64 S. E. 963; *Sykes* v. *Western Union Tel. Co.*, 150 N. C. 431, 64 S. E. 177.)   A stipulation on a message blank which provides that every claim must be presented within thirty days has been held valid.   (*Grant* v. *Western Union Tel. Co.*, 154 Mo. App. 279, 133 S. W. 673.)   Unless there is a statutory provision invalidating, by its very terms, stipulations of this kind, there is no doubt but that the foregoing cases recite the law respecting these stipulations.

On the question of the amount of damages recoverable, the case of *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1, 38 L. Ed. 883, 14 Sup. Ct. Rep. 1098, is directly in point.   The court there reaches the conclusion that a stipulation providing that unless the sender orders the telegram repeated back to the original station for comparison and pays half that sum in addition, the liability attaching to the telegraph company will be no more than the amount paid for the transmission of the telegram, is a reasonable and valid stipulation and provision as between the parties.   (2 Thompson on Negligence, secs. 2411, 2429, 2431, 2438; *Western Union Tel. Co.* v. *Dougherty;* 54 Ark. 221, 26 Am. St. Rep. 33, 11 L. R. A. 102, 15 S. W. 468.) There is no contention made on the part of the plaintiff that he did not know of and consent to the stipulation, the only contention in that respect being that the stipulations are unreasonable, no claim being made that he did not fully know all about the stipulations.   The case of *Stone & Co.* v. *Postal-Telegraph Co.*, 31 R. I. 174, 29 L. R. A. (n. s.) 795, 76 Atl. 762, holds that a stipulation that notice of a claim for damages for delay in transmission and delivery must be given within sixty days from the date of the message is reasonable and binding.

(See, also, *Barnes* v. *Postal Telegraph-Cable Co.*, 156 N. C. 150, 72 S. E. 78.)

*Messrs. Lew. L.* and *E. J. Callaway* and *Mr. E. B. Howell*, for Respondent, submitted a brief; *Mr. Lew. L. Callaway* argued the cause orally.

"It has been held by some courts that, when a contract was made with one of these companies to send a message and it negligently transmitted or delayed in delivering the message, the company was guilty of a breach of contract and the sender's action should be in contract.  But the weight of authority is that the sender may maintain an action for the breach of the contract, or he may proceed against the company for the breach of its public duty or sue in tort.  We are inclined to think that the latter view is the correct one."  (Jones on Telegraph & Telephone Cos., sec. 468; *Shingleur* v. *Western Union Tel. Co.*, 72 Miss. 1030, 48 Am. St. Rep. 604, 30 L. R. A. 444, 18 South. 425; *Francis* v. *Western Union Tel. Co.*, 58 Minn. 252, 49 Am. St. Rep. 507, 25 L. R. A. 406, 59 N. W. 1078; *McPeek* v. *Western Union Tel. Co.*, 107 Iowa, 356, 70 Am. St. Rep. 205, 43 L. R. A. 214, 78 N. W. 63; *Brown* v. *Chicago etc. Ry. Co.*, 54 Wis. 342, Am. Rep. 41, 11 N. W. 356, 911.)

The telegraph company is a primary tort-feasor, and exemplary damages are recoverable against it.  The old doctrine. that the company would not be liable in a case of this kind unless it ratified the act of its agent has long since been exploded.  In *Richberger* v. *American Express Co.*, 73 Miss. 161, 55 Am. St. Rep. 522, 31 L. R. A. 390, 18 South. 922, the supreme court of Mississippi held that the old doctrine of *McManus* v. *Crickett*, 1 East, 106, 102 Eng. Reprint, 43, in which it was held that the master is never liable for the willful or malicious act of his servant, has long since been repudiated, and expressly overruled the case of *McCoy* v. *McKowen*, 26 Miss. 487, 59 Am. Dec. 264, and *New Orleans, J. & G. N. Rue Co.* v. *Harrison*, 48 Miss. 112, 12 Am. Rep. 356.  (See, also, *Butler* v. *Western Union Tel. Co.*, 65 S. C. 510, 44 S. E. 91; *Hellams*

v. *Western Union Tel. Co.,* 70 S. C. 83, 49 S. E. 12.)   Two cases especially applicable to the one at bar are *McCord* v. *Western Union Tel. Co.,* 39 Minn. 181, 12 Am. St. Rep. 636, 1 L. R. A. 143, 144, 39 N. W. 315, and *Pacific Postal Tel.-Cable Co.* v. *Bank of Palo Alto,* 109 Fed. 369, 54 L. R. A. 711, 48 C. C. A. 413. In the last case cited the opinion is by Judge Hawley and there is an exhaustive citation of authorities.   The facts show fraud on the part of the appellants, and under subdivision 4 of section 6449, Revised Codes, the cause of action therefor is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.   (Jones on Telegraph and Telephone Cos., sec. 392; *Western Union Tel. Co.* v. *Reynolds,* 77 Va. 173, 46 Am. Rep. 715.)   The case of *Gulf Coast & S. F. Ry. Co.* v. *Todd* (Tex. App.), 19 S. W. 761, was very similar to the present one.   The contents of a telegram had been secretly disclosed by the telegraph agent, resulting in damage to the sender.   The latter did not discover the wrong until the sixty-day period had expired.   But the court held that the sender was not bound by the stipulation.   (37 Cyc. 1690; *Sherrill* v. *Western Union Tel. Co.,* 109 N. C. 527, 14 S. E. 94; *Conrad* v. *Western Union Tel. Co.,* 162 Pa. St. 204, 29 Atl. 888; *Sweatland* v. *Illinois & M. Telegraph Co.,* 27 Iowa, 433, 1 Am. Rep. 285.)

But the stipulation as to respondent was void anyhow.   In *Western Union Tel. Co.* v. *Longwill,* 5 N. M. 308, 21 Pac. 339, the court laid down the rule that a telegraph company cannot stipulate that it will not be liable for damages on account of negligence in the delivery of a message unless a claim therefor in writing is presented within sixty days from the date of the receipt of the message.   (3 Sutherland on Damages, 296; *Western Union Tel. Co.* v. *Carew,* 15 Mich. 525; *United States Tel. Co.* v. *Gildersleve,* 29 Md. 232, 248, 96 Am. Dec. 519; *Western Union Tel. Co.* v. *Graham,* 1 Colo. 230, 9 Am. Rep. 136; *Western Union Tel. Co.* v. *Fontaine,* 58 Ga. 433; *True* v. *International Tel. Co.,* 60 Me. 9, 11 Am. Rep. 156; *Western Union Tel. Co.* v. *Fenton,* 52 Ind. 1, *Candee* v. *Western Union*

*Tel. Co.,* 34 Wis. 471, 17 Am. Rep. 452; *Breese* v. *United States Tel. Co.,* 48 N. Y. 132, 8 Am. Rep. 526; *Grinnell* v. *Western Union Tel. Co.,* 113 Mass. 299, 18 Am. Rep. 485; *Passmore* v. *Western Union Tel. Co.,* 78 Pa. St. 238.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In April, 1912, F. H. Tyro was the agent for the Continental Telegraph Company at Jefferson Island station, and Shadan Lahood was engaged in the mercantile business at the same place. On April 8 Lahood had an inquiry from the Gamble-Robinson Fruit Company for three carloads of potatoes, and in reply thereto telegraphed quoting prices. About noon of the same day he received a telegram from the fruit company to send three carloads at once and wire just what he could do. At 1:55 P. M., Lahood wired that one carload had been sold to another concern before the fruit company's telegram arrived, and inquired what top price the company would pay. As agent for the telegraph company in charge of their office, Tyro had sent and received these messages and knew their contents. At the time he sent Lahood's message at 1:55 P. M. on April 8 he also sent one on his own account as follows:

"To Gamble-Robinson Fruit Co., Miles City, Mont.:

"What will you give me commission if I get you a car No. 1 white stock f. o. b. Jefferson Island at one ninety-five. Deal confidential. None of Lahood's prospects. Ship at once.

"F. H. TYRO."

About 4:35 of the same day the Gamble-Robinson Fruit Company telegraphed to Lahood that it would pay $2.10 per hundred-weight, and added: "Let me know at once as have another deal on in the Bitter-root." At the same time it wired Tyro: "Offer you two-ten. Wire quick if that is all right." Instead of delivering Lahood's message at once, Tyro retained it in his possession, arranged for a car of potatoes on his own account, and at 5:45 P. M. wired the fruit company that he accepted its offer and would ship on the second or third day following.

Then at about 8 P. M. he delivered Lahood's message, and Lahood, in ignorance of Tyro's double-dealings, immediately purchased two carloads of potatoes, and the same evening delivered to Tyro for transmission to the fruit company this message: "Load two cars Monday at price named." This telegram Tyro held up, and on the morning of the ninth wired the fruit company as follows:

"Gamble-Rob. Fruit Company, Miles City, Mont.:

"Can you handle another car of spuds at two ten? Load first car to-morrow. What are shipping instructions on this car?                                              F. H. TYRO."

—and about noon received in reply the following:

"F. H. Tyro, Jefferson Island, Montana:

"Wire received. Answer yes. Ship both cars to us Miles City.              GAMBLE-ROBINSON FRUIT COMPANY."

Some time in the evening of the 9th, Tyro sent the message which Lahood had delivered to him the day before, and on the 10th the fruit company wrote Lahood that it had purchased elsewhere and could not use his potatoes. Tyro shipped the two carloads on his own account and made a net profit of about $100. Lahood after great effort and at great loss disposed of most of his potatoes, and brought this action to recover damages, and prevailed in the lower court. From the adverse judgment and from an order denying a new trial, the defendants appealed.

The information which Tyro received concerning the business requirements of the Gamble-Robinson Fruit Company, and which prompted his duplicity to his own profit and Lahood's loss, belonged to Lahood, who had paid for it. It was confidential in the strictest sense of the term, and could not be used or disclosed by the telegraph company or its agent. In using it to undermine his company's customer and to secure the profit from the transaction for himself Tyro was not merely guilty of perpetrating a gross fraud upon Lahood, but, according to his own account, he was guilty of a crime for which he should have suffered severe punishment. Section 8824, Revised

Codes, provides: "Every agent, operator, or employee of any telegraph office, who in any way uses or appropriates any information derived by him from any private message passing through his hands, and addressed to another person, or in any other manner acquired by him by reason of his trust as such agent, operator, or employee, or trades or speculates upon any such information so obtained, or in any manner turns, or attempts to turn, the same to his own account, profit, or advantage, is punishable by imprisonment in the state prison not exceeding five years, or by imprisonment in the county jail not exceeding one year, or by a fine not exceeding five thousand dollars, or by both fine and imprisonment."

That Tyro is liable to Lahood for exemplary damages as well as for damages by way of compensation is settled by our Codes. Section 6047 provides: "In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

So likewise is Tyro's principal, the telegraph company, liable for compensatory damages; but it is insisted that the trial court erred: (1) In holding the telegraph company liable in punitive damages; and (2) in fixing the measure of recovery.

1. It is urged that the telegraph company is not liable for [1] punitive damages in this instance: (a) Because this is an action for the breach of a contract to transmit and deliver the messages referred to, and section 6047 is not applicable; (b) because the telegraph company is not charged as a primary tort-feasor, and never authorized Tyro's wrongful acts in the first instance, nor ratified them thereafter.

(a) At the time these messages were sent and received the defendant telegraph company was a carrier of messages for hire, holding itself out as such and soliciting the business of the public generally. While the application of the science of electricity to the transmission of intelligence is of comparatively

recent date, the importance of the function which the magnetic telegraph has performed in the commercial and social life during the last half century particularly has received recognition in rules and regulations adopted to define the rights and liabilities of the telegraph company, and which collectively may justly be termed the common law upon the subject. It is too well settled to admit of further debate that a telegraph company is not a common carrier unless made such by express statute. Our own Codes define ''common carrier'' (section 5332, Rev. Codes), and distinguish between a common carrier of messages and a carrier of messages by telegraph or telephone. While the telegraph company is not an insurer of the speedy and accurate transmission of a paid message, it is engaged in the performance of a public service, owes to the general public a well-defined duty, and in return enjoys the privilege of exercising the power of eminent domain. It is held to the exercise of ordinary care and diligence, and for its negligence may be compelled to respond in damages. Though its engagements with its customers may be, and generally are, evidenced by contract, its duty arises from the public character of its business, and its responsibility is not dependent upon the existence of an agreement. The customer injured through the negligence of the telegraph company in transmitting or delivering his message may sue upon the contract, if one exists, but he is not limited to that remedy. He may sue in tort. This is the modern rule, now recognized generally. (Jones on Telegraph and Telephone Cos., sec. 468.) It is analogous to the principle applied to common carriers. (*Wall* v. *Northern Pac. Ry. Co.*, 50 Mont. 122, 145 Pac. 291; *Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642.)

(b) Appellants' contention that the telegraph company can-
[2] not be made to respond in punitive damages for its agent's misconduct in the absence of proof that the wrongful acts were authorized or ratified, finds some support in authorities from other jurisdictions; but the contrary doctrine is now settled as the rule of decision in this state. (*Grorud* v. *Lossl,* 48 Mont.

274, 136 Pac. 1069; *Burles* v. *Oregon S. L. Ry. Co.*, 49 Mont. 129, Ann. Cas. 1916A, 873, 140 Pac. 513.)

2. Measure of damages as affected: (a) By statute; (b) by agreement.

(a) *By statute.* Section 5361, Revised Codes, prescribes the [3] duties of a carrier of messages by telegraph or telephone. Section 5362 designates the order in which messages must be transmitted by a common carrier, and section 5363 provides that the person whose message is refused or postponed contrary to the provisions of the chapter is entitled to recover from the carrier his actual damages and $50 in addition thereto. These provisions do not apply here, but merely fix the measure of recovery in the ordinary negligence case where the circumstances are not aggravated by the presence of the elements of fraud, malice or oppression. Under the allegations of this complaint and the proof in support of them, plaintiff's right to punitive damages is governed by section 6047, above.

(b) *By agreement.* Upon the telegraph blanks used by this [4] plaintiff for the text of his messages two provisions were printed over the heading, "All messages taken by this company are subject to the following terms." The first provides for repeating the message to avoid mistake, but it can have no possible bearing in a case of this character, where the wrongful acts consist in fraudulently delaying messages and appropriating their contents to the use of the telegraph company's agent. If this action arose over a mistake in transmission, then the effect of that provision might require consideration. The second stipulation indorsed on the telegraph blank follows: "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission." It is conceded that plaintiff did not make any demand upon or present any claim to the telegraph company [5] until approximately a year after the transactions complained of; his excuse for the delay being that he did not discover the fraud until the last of January, 1913. He did, how-

ever, make demand within sixty days after such discovery.   If mere delay in transmission or delivery of a message furnishes the only ground of complaint in an action for damages for breach of contract, the provision above might possibly be invoked to defeat recovery when there has been unreasonable delay in making known the cause of complaint; but, as we have already determined, this action does not sound in contract in the first instance, and in the second place a telegraph company cannot defend against the fraud or crime of its agent by a stipulation which does not allow for time for the discovery of the wrongful acts.   In making such a stipulation the company certainly did not contemplate that its agent would be guilty of gross fraud or serious crime.   It was merely undertaking to guard against stale demands founded upon negligence.   Our conclusion is that the stipulation refers only to claims arising from negligence, and therefore is not applicable here.   If it was ever intended as a cloak for fraud or crime, we should have no hesitation in holding it void as against public policy.   (Rev. Codes, sec. 5052.)

Complaint is made of instruction 8, and, if it stood alone, its inaccuracy might lead to serious consequences; but its defects are negative rather than affirmative; it is deficient rather than positively erroneous; and, when read in connection with instruction 10a, we think it could not have misled the jury to defendants' prejudice.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied May 22, 1916.