[Civ. No. 41187. Second Dist., Div. Two. Oct. 2, 1973.]

NANCY W. ALLYN et al., Plaintiffs and Appellants, v.
JAMES ALLISON, as Registrar of Voters, etc.,
Defendant and Respondent.

**450**

**COUNSEL**

David A. Binder, Paul Bergman, Paul Boland, Bruce Fisher, Rosalyn M. Chapman, Robert Mann, Carole Goldberg and Barbara Moore for Plaintiffs and Appellants.

John D. Maharg and John H. Larson, County Counsel, Edward H. Gaylord and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Elections Code section 310 which prescribes the contents of the voters affidavit of registration requires, among other things, that "The given name of a woman shall be preceded in all cases by the designation Miss or Mrs."

Appellants, both women, each executed an affidavit of registration on which they inserted before their names the designation Ms. which denotes the sex but not the marital status of a female. The Los Angeles County Registrar of Voters refused to accept and process the registrations. Pursuant to Elections Code section 350[1] appellants petitioned the Superior Court of Los Angeles County for a writ of mandate to require acceptance of their registration to vote. That court sustained a demurrer without leave to amend and entered an order of dismissal. This appeal ensued.

---

[1]Elections Code section 350 provides: "If the county clerk refuses to register any qualified elector in the county, the elector may proceed by action in the superior court to compel his registration. In an action under this section, as many persons may join as plaintiffs as have causes of action."

■ Appellant's contentions are that requiring a woman to disclose her marital status when registering to vote (1) adds an unnecessary requirement to the voting qualifications contained in article II, section 1 of the California Constitution;[2] (2) denies to women the equal protection of the law since there is no similar requirement for men; and (3) violates the Nineteenth Amendment to the United States Constitution.[3]

■ It is settled by the great weight of authority that ". . . the Legislature has the power to enact reasonable provisions for the purpose of requiring persons who are electors and who desire to vote to show that they have the necessary qualifications, . . . Such provisions do not add to the qualifications required of electors, nor abridge the right of voting, but are only reasonable regulations for the purpose of ascertaining who are qualified electors, and to prevent persons who are not such electors from voting. These regulations must be reasonable and must not conflict with the requirements of the constitution." (*Bergevin* v. *Curtz,* 127 Cal. 86, at p. 88 [59 P. 312].)

■ Elections Code section 310 does not add to the qualifications of an elector nor does it impair the right to vote on the basis of sex unless it can be said that it imposes upon women an unreasonable condition for registration.

Appellants concede the power of the Legislature to require registration as a condition of voting in order to prevent fraud. They also concede that as a part of the registration requirement the state may require the giving of certain information which is proper and necessary to further that purpose. They simply argue that requiring the use of the designation Miss or Mrs. is not necessary to accomplishment of the state's objective and is thus unreasonable for the reason that the essential information can be developed by and in fact is developed by other questions in the registration affidavit. The registration affidavit requires the elector to report whether

---

[2]California Constitution, article II, section 1, as it read at the time of commencement of this action, provided in pertinent part: "Every . . . citizen of the United States of America . . . of the age of 21 years, who shall have been a resident of the State one year next preceding the day of the election, and of the county in which he or she claims his or her vote 90 days, and in the election precinct 54 days, shall be entitled to vote at all elections which are now or may hereafter be authorized by law; . . . provided further, no alien ineligible to citizenship . . . no person convicted of any infamous crime, no person hereafter convicted of the embezzlement or misappropriation of public money . . . shall ever exercise the privileges of an elector in this State . . . ."

[3]The Nineteenth Amendment to the United States Constitution provides: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex."

he or she has previously registered under another name, and appellants argue that that should be adequate for the state's purpose.

It may or may not be true that a listing of former registrations would necessarily provide the same leads to identification as the designation of Miss or Mrs. but that is not for us to decide. The structuring of the questions designed to produce the desired information is a matter for legislative determination. Appellate courts are not authorized to review such determinations. Their only function is to determine whether the exercise of legislative power has exceeded constitutional limitations. (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990].)

The number of times and ways in which the state may wish to ask questions aimed at producing the same information is not an issue on which the courts can invade the legislative sphere under the guise of constitutional consideration. ■ ▪ A legislative scheme which is reasonably structured to accomplish a recognized and proper governmental objective is not rendered unreasonable or unconstitutional simply because the objective might have been achieved in some other or even more efficient manner. (*Dribin* v. *Superior Court,* 37 Cal.2d 345 [231 P.2d 809, 24 A.L.R.2d 864].)

■ It is true that section 310 does not require that men disclose their marital status. There is but one designation for men, that of Mr., which applies whether the man is married or unmarried. On the other hand, Miss tends to denote an unmarried woman and Mrs. a married woman, although a widow or divorcee may also properly use the designation Mrs.

Marital status, however, is not the key to the requirement that women use a particular designation. The designation Mrs. preceding a woman's name is an indication that she has previously had another name since under our law the woman upon marriage takes the name of her husband. Conversely, the husband's name does not change. Thus, it is reasonable for the state to require as identifying information that a woman use the designation of either Miss or Mrs. as an aid in assuring that a previous registration has been cancelled and that a woman does not vote twice. Knowledge of the marital status of a man would provide no such aid.

■ Article I, section 11 of the California Constitution mandates that all laws of a general nature have a uniform operation. Section 11 is satisfied when the law operates upon all persons standing in the same category. (*Wigmore* v. *Buell,* 122 Cal. 144 [54 P. 600]; *Gregory* v. *Hecke,* 73 Cal. App. 268 [23 P. 787].) This category or class must be founded on a natural, intrinsic and constitutional distinction. (*Ex Parte Koser,* 60 Cal. 177; *Lelande* v. *Lowery,* 26 Cal.2d 224 [157 P. 639, 175 A.L.R. 1109].)

The Legislature can make reasonable classifications, i.e., classifications which have a substantial relation to a legitimate object to be accomplished. (*City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 P. 604]; *Hollenbeck-Bush P. Mill Co.* v. *Amweg,* 177 Cal. 159 [170 P. 148]; *In re Sumida,* 177 Cal. 388, 391 [178 P. 873].)

Certainly the requirement of certainty of identification of prospective voters is a legitimate concern of the Legislature. When the problem of identification is unique to one group because of use of multi-names and titles, it is reasonable to set that group apart. Such classification does not amount to a denial of equal protection of the law. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." (*Williamson* v. *Lee Optical Co.,* 348 U.S. 483, at p. 489 [99 L.Ed. 563, at p. 573, 75 S.Ct. 461].)

No invidious discrimination can be found in a reasonable attempt to identify electors whether by sex or by any other natural and logical means of classification.

Assuming that compliance with the requirements of section 310 of the Elections Code results in the disclosure of marital status, such compliance is not onerous or burdensome. A woman is not disadvantaged in any way by such disclosure. There is nothing private about the status of marriage or its termination. The various legal incidents which create it or terminate it are matters of public record.

Elections Code section 310 as any other legislative enactment is clothed with a presumption of constitutionality. (*Collins* v. *Riley,* 24 Cal.2d 912 [152 P.2d 169]; *Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701].) Appellants have not established any basis for overriding that presumption. Their contentions are more properly addressed to the Legislature.[4]

The order is affirmed.

**ROTH, P. J.**—I concur even though I agree that section 310 of the Elections Code, without apparent solid reason, seeks and requires specific information from female voter registrants in respect of marital status which males are not required to give. If marriage status is important the purpose of ascertaining that status and equal treatment of the sexes would be better served if both males and females were asked to state whether they were single or married as is currently required in applications for a driver's license, without designation of Mrs., Miss, Ms., or Mr.

---

[4]At this time there is pending in the Legislature Senate Bill No. 19 and Assembly Bill No. 765, both of which would accomplish the result which appellants seek.

At bench, however, the difference complained of is, and over a long period of years has had, so little effect upon the allegedly wronged party, that even though it could be probably whipped and beaten into constitutional proportions, I cannot engender sufficient provocation to attempt to correct through the judicial process a discrimination so trivial without giving the first opportunity to the Legislature to satisfy all those truly interested.

Section 310 was amended in 1970 requiring the registrant's social security number. A sentence was added that notwithstanding such requirement "no person shall be denied the right to register because of his failure to furnish his social security number."

Again, in 1972, subdivision (c) of section 310 was amended requesting information as to residence phone number, but was followed with the requirement that the registration clerk or deputy registrar inform the registrant that failure to furnish such phone number could not be used as ground to deny registration. If requirements with respect to social security number and phone number can be waived, both of which items appear to me to be equally helpful as aids in exposing fraud in registration, as does the use or lack of use of terms such as Mr., Mrs., Miss or Ms., it might be well for the Legislature to amend section 310 so as to give the ladies an option as to the use of Miss, Mrs., or Ms. or nothing at all and register as Jill Doe in precisely the same way as Jack does.

**FLEMING, J.,** Concurring.—Like titles of military rank the market in titles for women never ceases to fluctuate. The earlier respected title of MISTRESS has fallen on hard times, and the once vaunted title of MADAM has suffered a worse fate, rehabilitative efforts of Frances Perkins and Pearl Mesta notwithstanding. On the other hand the title MISS, probably an abbreviation for MISTRESS, has risen in the scale from a designation for a concubine to one for a young unmarried woman, while the title MRS., also an abbreviation for MISTRESS, has fallen from a title of gentility to one now extended to all married women without superior titles. Petitioners here assert a constitutional right to the use of a third title, Ms., on the ground they are affronted and offended by having to choose between MISS and MRS. and thereby designate their marital status for purposes of voting registration.

Apart from general custom I find no essential connection between marital status and use of the titles, MISS and MRS. Actresses today, even those who have married as many times as the sands of the sea, use the title MISS. In past centuries the practice was the precise opposite, and actresses and

authoresses used the title MRS. regardless of marital status, as for example, Mrs. Siddons and Mrs. Hannah More. Nor was this custom limited to women in public life, for during the 17th and 18th centuries usage of the title MRS. by unmarried women in private life was common. (See entry for *Mrs.* in The Oxford English Dictionary, Clarendon Press (Oxford 1933).)

In my view a female voter registrant is free to use either of the two authorized descriptive titles, MISS or MRS., regardless of marital status. If a choice of two titles is deemed insufficient and a third option is desired, then the remedy lies with the Legislature and not with the courts.

A petition for a rehearing was denied October 29, 1973, and appellants' petition for a hearing by the Supreme Court was denied December 5, 1973. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.